**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

DEC − 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| PETER AMAEFULE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No: ⟨Ο6-2087⟩ |
| | ) |
| EXXONMOBIL OIL CORPORATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY INJUNCTION WITH LOCAL RULE 65.1 CERTIFICATION**

**NOW COMES** Plaintiff, Peter Amaefule, through undersigned counsel, Peter C. Ibe, Esquire, and Victor Mba-Jonas, Esquire, pursuant to the Petroleom Marketing Practices Act, 15 U.S.C. § 2805(b) ("PMPA"), and files this motion for temporary restraining order and preliminary injunction to enjoin defendant, ExxonMobil Oil Corporation, from terminating the parties' petroleum marketing franchise, and from causing the closure of Plaintiff's retail Exxon Service Station located at 4650 South Capitol Street, SE, Washington, DC 20032. In support of this motion, Plaintiff states as follows:

Plaintiff recently received a written notice (dated November 20, 2006) from Defendant, which terminated the parties' franchise petroleum relationship. The written notice indicated that the termination would become effective on December 8, 2006 and that Plaintiff should remove his personal property from the premises on or before the effective date, namely, December 8, 2006. As such, Plaintiff is now faced with the immediate and irreparable loss of the valuable franchise and business he has operated for

more than fifteen years if the threatened termination is not enjoined pending trial on the merits.

The PMPA provides for a relaxed standard for the issuance of preliminary injunctive relief, which is applicable in this case. The PMPA provides for injunctive relief for franchisees to prevent franchise termination if the franchise has been terminated and the merits of the franchisee's case provide a fair ground for litigation or the balance of the hardships weigh in favor of granting such relief. *See* 15 U.S.C. § 2805(b)(2). The present case presents sufficiently serious questions going to the merits to make such questions a fair ground for litigation. Additionally, virtually no hardship would be imposed on the Defendant by the grant of the injunction requested by Plaintiff. Even if Defendant would suffer some hardship, such hardship would be significantly less than the hardship which Plaintiff would suffer if the requested injunction is not granted.

**WHEREFORE**, as explained in the accompanying memorandum and exhibits (which are incorporated by reference herein), Plaintiff prays this Court to grant an *ex parte* temporary restraining order in Plaintiff's favor as well as the requested injunctive relief.

**REQUEST FOR HEARING**

Given the urgency of this matter, Plaintiff respectfully requests the grant of an *ex parte* temporary restraining order in Plaintiff's favor. Plaintiff also requests an emergency hearing on this Motion as soon as practicable before December 8, 2006.

## CERTIFICATION OF COUNSEL UNDER LOCAL RULE 65.1(A)

I hereby certify that actual notice of time of making the application, and copies of all pleadings and papers to be presented to the Court, have been furnished to the adverse party, by facsimile to Edward H. Beck, Esq., ExxonMobil Oil Corporation, 3225 Gallows Road, Room 3D0204, Fairfax, VA 22037 (703)846-5877, and (703)850-0454. Specifically, the Plaintiff's counsel provided notice of the instant motion to the adverse party by transmitting the Motion, Memorandum in Support of the Motion, and the Summons and Verified Complaint via facsimile transmission and informed the adverse party of the date and time on which this motion would be presented to this Court. The Relief requested herein is specifically provided for in Fed.R.Civ.P. 65, and in 15 U.S.C. § 2805. The factual basis for this Motion is set forth in the Complaint filed by the Plaintiff. Actual notice of the making of this application was also furnished to Mr. Greg Kenny, ExxonMobil Oil Corporation, Houston, Texas, (713) 656-6523.

PETER C. IBE, D.C. BAR # 481265
1717 K Street, NW,
Suite 600
Washington, DC 20036
Phone: (202) 276-7662

Respectfully submitted,

PETER C. IBE, D.C. BAR # 481265
1717 K Street, NW,
Suite 600
Washington, DC 20036
Phone: (202) 276-7662

Victor Mba-Jonas, Esq., D.C. BAR # 452042
8020 New Hampshire Avenue,
Suite 130, Adelphi, MD 20783
Phone: (301) 431-0333

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER AMAEFULE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No: |
| | ) |
| EXXONMOBIL OIL CORPORATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**NOW COMES**, Plaintiff, Peter Amaefule (Franchisee), individually, by and through counsel, Peter C. Ibe, Esquire, and Victor Mba-Jonas, Esquire, and files this Memorandum of Law In Support Of [his] Motion for a Temporary Restraining Order and Preliminary Injunction.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, Peter Amaefule, requests that this Court issue a Temporary Restraining Order and a Preliminary Injunction as requested herein. Time is of the essence in this action.

As stated in the Verified Complaint, the Plaintiff (franchisee) believes that the Defendant (franchisor) is attempting to terminate the parties Petroleum Marketing Practices Act (PMPA) Franchise Agreement and the attendant franchise relationship despite the fact that none of the grounds or preconditions necessary to terminate the franchise relationship as required pursuant to 15 U.S.C. section 2802(b) of the Petroleum Marketing Practices Act (PMPA) exist. Plaintiff requests a preliminary injunction pursuant to Section 2805 (b) (2) of the PMPA and pursuant to Fed.R.Civ.P. 65, to

prohibit the Defendant from terminating the parties PMPA Franchise Agreement and the attendant franchise relationship and from taking possession of the gasoline station located at 4650 South Capitol Street, SE, Washington, DC 20032. For the reasons stated in the Complaint, in the Motion for Temporary Restraining Order and Preliminary Injunction, and in this Memorandum, unless the Defendant is enjoined as requested the Plaintiff will suffer irreparable harm for which there is no adequate remedy at law.

## I.    INTRODUCTION

The instant case is controlled by the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2802 et seq. One of the main purposes of the PMPA is to protect retail franchisees and to prevent the arbitrary and discriminatory termination of petroleum marketing franchises. Under the PMPA, franchisees such as the Plaintiff are entitled to preliminary injunctive relief under a relaxed injunction standard designed to benefit the small retailer, and intentionally drawn to facilitate the grant of injunctive relief. *See Barnes v. Gulf Oil Corp.*, 824 F.2d 300, 306 (4th Cir. 1987) ("*Barnes II*"). The facts and circumstances of this case mandate the grant of injunctive relief in the Plaintiff's favor.

Plaintiff, Peter Amaefule, faces the illegal termination of his "Exxon" gasoline marketing franchise and business located at 4650 South Capitol Street, SE, Washington, DC 20032. This threat of imminent termination of the franchise is embodied in a written notice of termination (dated November 20, 2006), which the Defendant, ExxonMobil Oil Corporation ("Exxon"), sent to the Plaintiff. The stated grounds for the termination are: Plaintiff's alleged failure to operate his service station for the sale of motor fuel for at least seven consecutive days; and Plaintiff's alleged failure to use his best efforts to maximize the sale of Exxon's motor fuel products at Plaintiff's station.

2

Exxon's action violates the PMPA in a number of ways, and must be enjoined to maintain the status quo ante pending a trial on the merits. This issue and other sub-issues will be discussed in detail in the Argument section of this Memorandum.

## II. FACTS

The Plaintiff's association with the Exxon began in 1990 when the Plaintiff entered into a Trial Franchise Agreement with Exxon with respect to the gasoline station located at 4650 South Capitol Street, SE, Washington, DC 20032 (hereinafter the "Marketing Premises").    After the trial period, in 1991, Plaintiff entered into a full-fledged Franchise Agreement with the Defendant (the 1991 Franchise Agreement). Pursuant to that agreement, Plaintiff, as a franchisee, operated a gasoline station, selling motor fuel and other products supplied the Defendant (franchisor). The Plaintiff and the Defendant have been renewing this franchise agreement periodically until the present time.

On December 14, 2005, Plaintiff and Defendant entered into a PMPA Franchise Agreement for the premises located at 4650 South Capitol Street, SE, Washington, DC 20032 (hereinafter the "Marketing Premises"). This new Franchise Agreement renewed the parties' their existing franchise relationship whereby Plaintiff agreed to lease the Marketing Premises from Defendant and purchase motor fuels from Defendant for resale to the motoring public. The effective date of the new Franchise Agreement (the 2006 Franchise Agreement) was April 1, 2006 and the expiration date is March 31, 2009. Under the provisions of the PMPA, pursuant to the Franchise Agreement, Plaintiff is the franchisee and Defendant is the Franchisor.

The PMPA governs the termination or non-renewal of the 2006 Franchise Agreement. A copy of the 2006 Franchise Agreement is attached to the Complaint, filed contemporaneously herewith, as Exhibit A.

In its business dealings with the Plaintiff, Exxon utilizes an electronic or computerized system or device to monitor the Plaintiff's gasoline inventory. Exxon also uses the same system in dealing with other franchisees. Under this system, if Exxon notices that Plaintiff gasoline inventory is diminishing or significantly diminishing, Exxon initiates the supply of more gasoline to the Plaintiff. This system virtually eliminates the need for Plaintiff to request more gasoline supply from Exxon. In theory, this system also eliminates the possibility or likelihood that Exxon would attempt to supply gasoline to the Plaintiff when the Plaintiff has full gasoline inventory (or enough gasoline inventory) and no need or room for further supply of gasoline by Exxon.

Despite the above computerized supply system, on numerous occasions, Exxon attempts to supply unwanted gasoline to the Plaintiff even though Exxon is and was aware through the computerized system that the Plaintiff had no need for the gasoline and has little or no room to store the excess gasoline. The apparent reason for Exxon's attempt to supply unwanted gasoline to the Plaintiff is to maximize Exxon's profits at the expense of the poor retail franchisee.

As a powerful oil and gas company, Exxon receives advance information regarding increase or decrease in the price of oil and the price of gasoline. When it learns in advance of the impending fall in oil and gasoline prices, Exxon moves with utmost speed to supply higher-priced gasoline to the retail franchisees such as the Plaintiff, whether they need the gasoline or not. When it learns in advance of such impending fall

4

in gasoline price, Exxon routinely disregards its computerized system in order to "dump" higher priced gasoline on the unsuspecting retail franchisees. By contrast, when Exxon learns in advance of the impending increase in gasoline prices, Exxon would disregard the computerized system and would not supply needed gasoline to the retail franchises (at best, Exxon would delay the supply). Instead, Exxon would delay the supply of the gasoline to coincide with the increase in gasoline prices. By so-doing, Exxon would sell its old inventory of lower priced gasoline at the new and prevailing higher price to the unsuspecting retail franchisees.

The practical effect of Exxon's gasoline hoarding and profiteering scheme (described above) on retail franchisees such as the Plaintiff is financially devastating. By supplying Plaintiff with higher-priced gasoline when gasoline prices are low, Exxon ensures that Plaintiff's gasoline station would be selling gasoline at a higher price than his competitors, and that Plaintiff would either make no profits or suffer losses on such sales. Plaintiff has repeatedly complained to Exxon regarding Exxon's gasoline hoarding and profiteering scheme and its negative effects on Plaintiff and Plaintiff's business and sales. A group or association of retail franchisees has also lodged complaints with Exxon regarding Exxon's gasoline hoarding and profiteering scheme. Exxon's gasoline hoarding and profiteering scheme has been ongoing and it continues even under the 2006 Franchise Agreement despite the Plaintiff's protests.

In November 2006, Exxon's practice of supplying old inventory of higher priced gasoline to the Plaintiff when the competitors' prices are lower or much lower, caused Plaintiff to lose a lot of money from the sale of the gasoline. As a result, for a few days, Plaintiff did not have enough funds to immediately order new gasoline supplies from the

Exxon to replenish Plaintiff's inventory and Exxon refused to supply the gasoline to the Plaintiff on credit. Thus, Exxon is the direct and indirect cause of the Plaintiff's alleged failure to sell motor fuel at his station for a few days.

It is significant to note that even though Plaintiff did not sell motor fuel for a few days at his Exxon Station, Plaintiff ensured that the premises always remained open for business, with respect to other aspects of the business such as the mechanics shop and the sale of other motor fuel and automobile-related products.

By letter dated November 20, 2006 (the "Termination Notice"), attached and incorporated as Exhibit E, Exxon notified Peter Amaefule that it is terminating the franchise and franchise relationship effective December 8, 2006 "based upon [Peter Amaefule's] failure to operate [his] service station for the sale of motor fuel for at least seven (7) consecutive days, beginning on October 30, 2006 continuing through and possibly beyond November 19, 2006." The Termination Notice also indicates that the termination is based on "[Peter Amaefule's] violation of Articles 2.1 and IX of the Franchise Agreement, which requires [Plaintiff] to use [his] best efforts to maximize the sale of ExxonMobil's motor fuel products at [Plaintiff's] station." The Termination Notice further provides that "[p]ursuant to Article XIV of the Franchise Agreement and Sections 2802(b)(2)(A), 2802(b)(2)(C) of the PMPA, Exxon hereby terminates its Franchise Agreement, franchise, and franchise relationship with you ..." The Termination Notice states that the termination is "final and irrevocable."

### III.  LEGAL STANDARD

#### A. The PMPA

In 1978, Congress enacted Title I of the PMPA to protect petroleum franchisees from arbitrary termination or nonrenewal of their franchises. *See Barnes v. Gulf Oil Corp.*, 795 F.2d 358, 360 (4th Cir. 1986) *("Barnes I")*. Central to the concern of Congress was the use by franchisors of contract termination as a remedy for contract violations. As the legislative history indicates:

> Commonly the franchisor is able to capitalize on his disparity of bargaining power to obtain great flexibility with respect to his rights to terminate the contractual relationship. As a result, termination of franchise agreements during the term as a remedy for contract violations has been repeatedly utilized.

S. Rep. No. 731, 9th Cong., 2nd Sess. 18, reprinted, 1978 U.S. Code Cong. & Admin. News 873, 875-77. The PMPA was intended to remedy the disparity of bargaining power between franchisors and franchisees, and to preserve "the competitive influence of independent franchisees in the marketplace." *Roberts v. Amoco Oil Company*, 740 F.2d 602, 612 (8th Cir. 1984). *See also Ellis v. Mobil Oil Corp.*, 969 F.2d 754, 755 (9th Cir. 1993) (finding "overriding purpose of the PMPA is to protect the franchisee's reasonable expectation of continuing the franchise relationship").

As remedial legislation, the PMPA must be construed liberally, consistent with its primary goal of protecting franchisees. *See, Khorenian v. Union Oil Co. of Calif.*, 16 F.2d 533, 535 (9th Cir. 1985), cited with approval in *Barnes II*, 824 F.2d at 305. The PMPA seeks to achieve its goals by "specifically set [ting] forth the permissible grounds for termination or nonrenewal of franchise relationships, and bestow[ing] on federal courts jurisdiction to remedy violations of the [PMPA]." *Doebereiner v. Sohio Oil Co.*, 880 F.2d 329, 332 (11th Cir. 1989), *amended on den. of pet. for reh.*, 893 F.2d 1274 (11th Cir. 1989). Under the PMPA, the termination of a petroleum franchise is barred unless

the termination meets specific statutory justifications. *See Darling v. Mobil Oil Corp.*, 864 F.2d 981, 984 (2nd Cir. 1989). As described in *Bridges Enters, v. Exxon Co. U.S.A.*, 820 F.2d 123, 124 (5th Cir. 1987), "[t]he statute is exclusive: a franchisor may terminate or nonrenew a franchise only if its action is based on a permitted ground, and only if the stringent notification requirements of Section 2804 have been met." *See also Barnes I*, 795 F.2d at 361. Where a franchisor bases its termination on a breach of the agreement, it must be shown that the termination was in fact based on the breach. *Reyes v. Atlantic Richfield Co.*, 12 F.3d 1464, 1469 (9th Cir. 1993).

## B. The PMPA's Strict Notice Requirement.

Under the PMPA, 90 days notice is the statutory norm. See, 15 U.S.C. § 2804(a). Only in those extreme cases where giving 90 days notice is not reasonable is the franchisor excused from the 90 days requirement and in that instance, notice is to be given "on the earliest date on which furnishing of such notification is reasonably practicable." 15 U.S.C. § 2804(b). Courts have cautioned that "the 90-days notice ordinarily required by the PMPA should not be lightly excused." *Wisser Co. Inc. v. Mobil Oil Co.*, 730 F.2d 54, 60 (2d Cir. 1984). Moreover, the "less than 90 days notice requirement is not an 'all or nothing' requirement that permits no notice at all when 90 days would be unreasonable." *Zipper v. Sun Company, Inc.*, 947 F. Supp. 62, 69 (E.D.N.Y. 1996).

## C. The PMPA's Liberal Injunctive Relief Standard.

As part of the general scheme for protecting franchisees, the PMPA "establishes a liberal standard for the issuance of a preliminary injunction." *Lyons v. Mobil Oil Corp.*, 526 F.Supp. 961, 968 (D. Conn. 1981); Khorenian, 761 F.2d at 535. That relaxed

injunction standard "was designed to benefit the small retailer" and the PMPA was "intentionally drawn to facilitate the grant of injunctive relief." *Barnes II, supra*, 824 F.2d at 306. In *Mobil Oil Corp. v. Vachon*, 580 F. Supp. 153, 156 (D. Mass. 1983), the court carefully explained the applicable injunction standard:

> Except as provided in paragraph (3), in any action under subsection (a) of this section, the court shall grant a preliminary injunction if-
> (A) the franchisee shows –
> (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party is not renewed, and
> (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
> (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

The PMPA, therefore, does not require a showing of irreparable harm. Even if irreparable harm were a requirement, however, the mere loss of a franchise has been found "irreparable." *See Stenberg v. Checker Oil Co.*, 573 F.2d 921 (6th Cir. 1978); *Gilderhus v. Amoco Oil Co.*, 470 F.Supp. 1302, 1304 (D. Minn. 1979); *Mils Co. v. Southland Corp.*, 454 F.2d 363 (7th Cir. 1971); *Wojciechowski v. Amoco Oil Co.*, 483 F.Supp. 109, 116 (E.D. Wis. 1980). Nor does the franchisee have to show a probability of success on the merits. He need only show some "reasonable chance of success" on the merits. *Saad v. Shell Oil Co.*, 460 F.Supp. 114, 116 (E.D. Mich. 1978).

The franchisee, in the language of the statute, must present a case, which raises "sufficiently serious questions going to the merits" of the case. The courts must also look at the balance of the hardships. If there is less hardship imposed upon the franchisor than upon the franchisee by granting the injunction, the court must consider this state of affairs

in evaluation of the necessity for injunctive relief. It is a point in the franchisee's favor. *See Gilderhus v. Amoco Oil Co., supra*, at 1304; *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178, 181 (D.S.C.1980); *Wojciechowski, supra* at 112. Judged by this liberal standard, plaintiff is clearly entitled to the injunctive relief he seeks.

## IV. ARGUMENT

**TERMINATION**: In the present case, Exxon's Termination Notice unequivocally states that the franchise will be terminated on December 8, 2006. **See** Exhibit B attached to the Complaint. Exxon also states that the termination decision is final and irrevocable. *Id.*

**HARDSHIP**: The hardships imposed on the franchisor (Exxon) by the issuance of such preliminary injunctive relief will be less than the hardship imposed on the franchisee (Plaintiff) if Plaintiff's request for preliminary injunctive relief is not granted. The hardship imposed on the Exxon (if any) would be negligible. The worst case scenario for Exxon would be that it may have to continue to honor the 2006 Franchise Agreement lease it entered into with the Plaintiff, pending a decision on the merits of this case. Otherwise there is no measurable harm to the Defendant, Exxon.

Failure to grant the relief requested by Plaintiff would result in the loss of his livelihood, loss of the business he built up for more than a ten-year period without compensation, loss of his investment in the business, loss of perishable inventory if Plaintiff is compelled to vacate the property, and loss of the right to continue in the petroleum business at this facility. Clearly, the irreparable hardships to be incurred by the Plaintiff greatly outweigh the inconvenience (if any), which would be suffered by the Defendant, Exxon.

**SERIOUS QUESTIONS GOING TO THE MERITS**: An injunction should issue because serious questions going to the merits exist regarding the legally of the grounds for termination proffered by Exxon. Exxon is required to demonstrate the "occurrence of an event which is relevant to the franchise relationship and as a result of which ... termination is reasonable" 15 U.S.C. § 2802(b)(2)(C). It is significant to note that at a trial of the merits, Exxon shoulders the burden of proof under 15 U.S.C. § 2805(c) to support a lawful termination under the PMPA. Thus, there are serious questions going to the merits regarding the presence of a legally justifiable ground for a termination under the PMPA.

**1. Exxon Cannot Establish That The Plaintiff's Alleged Failure To Sell Gasoline Or Motor Fuel For At Least Seven Consecutive Days, Without More, Constitutes A Sufficient Basis For Termination Under The PMPA.**

The relevant section of PMPA, 15 U.S.C § 2802(c)(9), provides that the franchise may be terminated for "[the franchisee's] failure to operate the marketing premises for 7 consecutive days, on any shorter period of time, which, taking into account facts and circumstances, amounts to an unreasonable period of time not to operate." By its very language, the above section of the PMPA deals with complete failure to operate the marketing premises, not just failure to sell gasoline. Thus, if the franchisee continues to operate the marketing premises with respect to other aspects of the business (such as the sale of other items, the operation of the mechanics shop, etc), even if the franchisee fails to sell gasoline for a seven-day period, the above section of the PMPA does not mandate or even permit the termination of the franchise. There is nothing in the PMPA that

11

specifically construes the operation of the marketing premises as restricted only to the sale of motor fuel.

In the present case, even during the seven-day period of time which Exxon claims that Plaintiff did not sell motor fuel, Plaintiff continued to operate the marketing premises, marketing and selling other items which form part of the business. Plaintiff operate the marketing premises, including the provision of auto repair services which was and is a part of the Plaintiff's business at the marketing premises located at 4650 South Capitol Street, SE, Washington, DC 20032. Thus, there is no legal or factual basis for Exxon's claim that Plaintiff failed to operate the marketing premises for seven consecutive days.

**2. Exxon Cannot Establish That It Was Not The Direct Or Indirect Cause Of The Plaintiff's Alleged Failure To Operate His Station For The Sale Of Motor Fuel For At Least Seven Consecutive Days.**

Plaintiff alleges that sometime in November 2006, Exxon's practice of supplying old inventory of gasoline (at higher prices) to the Plaintiff when the competitors' prices are lower or much lower (which was discussed earlier), caused Plaintiff to lose a lot of money from the sale of the gasoline. As a result, for a few days, Plaintiff did not have enough funds to immediately order new gasoline supplies from the Exxon to replenish Plaintiff's inventory and Exxon refused to supply the gasoline to the Plaintiff on credit. Thus, Exxon is the direct and indirect cause of the Plaintiff's alleged failure to sell motor fuel at his station for a few days.

**3. Exxon Has Not Met the Requirements to Assert Failure to Use Bests Efforts as a Basis of Termination.**

12

One of the bases of termination cited in Exxon's Termination Notice is "[Plaintiff's] violation of Articles 2.1 and IX of the Franchise Agreement, which requires [Plaintiff] to use [his] best efforts to maximize the sale of ExxonMobil's motor fuel products at [Plaintiff's] station."

The above-cited Section of the 2006 Franchise Agreement (Articles 2.1 and IX) is essentially a restatement of section 2802(b)(2)(B) of the PMPA, which further provides in section 2802(b)(2)(B)(i) that "franchisee was apprised by the franchisor in writing and such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions and pursuant to 2802(b)(2)(B0(ii)" and that "such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804."

In any event, termination on these grounds (failure to use best effort or failure make good faith efforts) requires that the franchisee **first be notified in writing** that he is not meeting a requirement of the Franchise Agreement **and be given an opportunity to make a good faith effort to carry out the requirement.** In the present case, no such notice and/or opportunity to comply have been provided by Exxon to the Plaintiff. Therefore, the requirements of the PMPA for termination on these grounds (failure to use best effort or failure make good faith efforts) have not been met.

## 4. Exxon Has Not Complied With The Notice Provisions Of Section 2804(A)(2) And 2804(B)(1) Of The PMPA.

The foregoing provisions of 2804 provide for ninety (90) days notice of termination except in circumstances where it would prove unreasonable for the franchisor to provide ninety (90) days notice. No such circumstance exists here. The alleged failure to sell

13

gasoline for seven consecutive days no longer exists. The violation, if there was one, has been cured. There was and is no current emergency mandating a notice period of less than ninety (90) days. Thus, the notice given by the Defendant is deficient under the terms of the PMPA.

Plaintiff has been a solid Exxon dealer for over fifteen (15) years. Plaintiff has persevered as a gas station franchisee through difficult times while remaining loyal to the Exxon brand and using his best efforts to market Exxon products. His business operations at the marketing premises during this time have been conducted without much incident or customer complaints. Yet, the Defendant gave Plaintiff less than 30 days notice for the termination of a franchise he has operated for over fifteen years. Defendant's course of action in this instance has been taken in wanton disregard of Plaintiff's tenure of more than fifteen years of loyal service, and in wanton disregard of the notice provisions of the PMPA.

**5. Exxon's Failure to Give 90 Days Notice Creates a Factual Issue Regarding the Reasonability of the Notice Provided.**

Where a franchisor elects to proceed under § 2804(b) to provide less than 90 days notice upon the occurrence of an "event", the franchisor must establish the reasonableness of its decision to dispense with the 90 days notice requirement. In determining the reasonableness of less than 90 days' notice, the issue of "reasonableness" is necessarily an issue of fact. *See Roberts v. Amoco Oil Co.*, 740 F.2d 602, 606 (8th Cir. 1984) (In discussing another section of the PMPA, court found that the legislative history of PMPA suggests that Congress intended to favor franchisees by treating "reasonableness" determination as an issue of fact). The term "reasonable" in the PMPA has been

14

interpreted to mean that which is "just, fair or proper." *Doebereiner v. Sohio Oil Co.*, 880 F.2d 329, as amended on denial of rehearing, 893 F.2d 1275 (11th Cir. 1990).

In the instance case, Exxon cannot establish the reasonableness of its decision to provide Plaintiff with less than the 90 days notice required by the PMPA. Because courts have cautioned that "the 90-days notice ordinarily required by the PMPA should not be lightly excused," *Wisser Co. Inc. v. Mobil Oil Co.*, 730 F.2d 54, 60 (2d Cir. 1984), serious questions going to the nature of the reasonableness of Exxon giving less than 90 days notice exists here, and as such, Plaintiff is entitled to the preliminary he seeks.

### V. CONCLUSION

Under the PMPA's relaxed standard, there are serious questions going to the merits of this case, making such questions a fair ground for litigation. In addition, the balance of hardships with regard to the granting or denial of the injunction greatly favors the plaintiffs. As a result, an injunction should be issued to preserve the franchise relationship pending a trial on the merits.

**WHEREFORE**, Plaintiff prays this Court to grant the requested temporary restraining order and injunctive relief.

15

## CERTIFICATION OF COUNSEL UNDER LOCAL RULE 65.1(A)

I hereby certify that actual notice of time of making the application, and copies of all pleadings and papers to be presented to the Court, have been furnished to the adverse party, by facsimile to Edward H. Beck, Esq., ExxonMobil Oil Corporation, 3225 Gallows Road, Room 3D0204, Fairfax, VA 22037 (703)846-5877, and (703)850-0454. Specifically, the Plaintiff's counsel provided notice of the instant motion to the adverse party by transmitting the Motion, Memorandum in Support of the Motion, and the Summons and Verified Complaint via facsimile transmission and informed the adverse party of the date and time on which this motion would be presented to this Court. The Relief requested herein is specifically provided for in Fed.R.Civ.P. 65, and in 15 U.S.C. § 2805. The factual basis for this Motion is set forth in the Complaint filed by the Plaintiff. Actual notice of the making of this application was also furnished to Mr. Greg Kenny, ExxonMobil Oil Corporation, Houston, Texas, (713) 656-6523.

PETER C. IBE, D.C. BAR # 481265
1717 K Street, NW,
Suite 600
Washington, DC 20036
Phone: (202) 276-7662

Respectfully submitted,

_____
PETER C. IBE, D.C. BAR # 481265
1717 K Street, NW,
Suite 600
Washington, DC 20036
Phone: (202) 276-7662

_____
Victor Mba-Jonas, Esq., D.C. BAR # 452042
8020 New Hampshire Avenue,
Suite 130, Adelphi, MD 20783
Phone: (301) 431-0333

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER AMAEFULE | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )Civil Action No: |
| | ) |
| **EXXONMOBIL OIL CORPORATION** | ) |
| | ) |
| **Defendant.** | ) |
| ———————————————— | ) |

## TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Upon consideration of the Plaintiff's Motion for Temporary Restraining Order

and Preliminary Injunction, and the Defendant having been notified of the Plaintiff's

application, and it appearing that immediate and irreparable injury will result to the

Plaintiff through the loss of a valuable petroleum marketing franchise and business, and

the Defendant having appeared (or not appeared) at the hearing on the motion, and the

Court being satisfied that the Plaintiff's franchise has been terminated or is about to be

terminated, that there exist sufficiently serious questions on the merits to the underlying

issues a fair ground for litigation under the Petroleum Marketing Practices Act (PMPA),

15 U.S.C. § 2801, *et seq.*, and it appearing further that the balance of hardships favors the

Plaintiff, it is this _____ day of _____, 2006,

**ORDERED** and **DECREED**, that the Defendant is restrained and enjoined from

taking any further action to terminate the Plaintiff's franchise pending a full hearing on

the merits; and it is further

**ORDERED** and **DECREED**, that the parties' 2006 Franchise Agreement shall

remain in full force and effect until further order of this Court; and it is further

1

**ORDERED** and **DECREED**, that given the nature of the relationship and the absence of hardship to the Defendant and the parties' continued relationship, no bond is required.

_____
United States District Judge