IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER AMAEFULE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 1:06-cv-02087-RWR |
| ) | |
| EXXONMOBIL OIL CORPORATION ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Peter Amaefule, through undersigned counsel, Peter C. Ibe, Esquire, and Victor Mba-Jonas, Esquire, moves for summary judgment pursuant to Fed.R.Civ.P. 56 against defendant, ExxonMobil Oil Corporation ("Exxon"). The grounds for this motion are described in the attached Brief in Support of Plaintiff's Motion for Summary Judgment which is filed contemporaneously with this motion. Plaintiff incorporates by reference the Verified Complaint and exhibits as well as the motion for preliminary injunction and supporting memorandum.

**WHEREFORE**, Plaintiff respectfully requests the Court to grant his Motion for Summary Judgment.

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY**

**JUDGMENT**

**INTRODUCTION**

As alleged in the Complaint, the Plaintiff's association with the Exxon began in 1990 when the Plaintiff entered into a Trial Franchise Agreement with Exxon with respect to the gasoline station located at 4650 South Capitol Street, SE, Washington, DC

20032 (hereinafter the "Marketing Premises").  After the trial period, in 1991, Plaintiff entered into a full-fledged Franchise Agreement with the Defendant (the 1991 Franchise Agreement). Pursuant to that agreement, Plaintiff, as a franchisee, operated a gasoline station, selling motor fuel and other products supplied the Defendant (franchisor). The Plaintiff and the Defendant have been renewing this franchise agreement periodically until the present time.

On December 14, 2005, Plaintiff and Defendant entered into a PMPA Franchise Agreement for the premises located at 4650 South Capitol Street, SE, Washington, DC 20032 (hereinafter the "Marketing Premises"). This new Franchise Agreement renewed the parties' existing franchise relationship whereby Plaintiff agreed to lease the Marketing Premises from Defendant and purchase motor fuels from Defendant for resale to the motoring public. The effective date of the new Franchise Agreement (the 2006 Franchise Agreement) was April 1, 2006 and the expiration date is March 31, 2009. Under the provisions of the PMPA, pursuant to the Franchise Agreement, Plaintiff is the franchisee and Defendant is the Franchisor. The PMPA governs the termination or non-renewal of the 2006 Franchise Agreement.

In its business dealings with the Plaintiff, Exxon utilizes an electronic or computerized system or device to monitor the Plaintiff's gasoline inventory. Exxon also uses the same system in dealing with other franchisees. Under this system, if Exxon notices that Plaintiff gasoline inventory is diminishing or significantly diminishing, Exxon initiates the supply of more gasoline to the Plaintiff. This system virtually eliminates the need for Plaintiff to request more gasoline supply from Exxon. In theory, this system also eliminates the possibility or likelihood that Exxon would attempt to

supply gasoline to the Plaintiff when the Plaintiff has full gasoline inventory (or enough gasoline inventory) and no need or room for further supply of gasoline by Exxon.

Plaintiff's Complaint alleges that the Defendant's business practices, pricing practices and marketing practices significantly contributed or caused to Plaintiff's financial problems, which ultimately resulted in Plaintiff's failure to sell gasoline at his gasoline station for a period of a few days. Thus, Exxon is a direct and/or indirect cause of the Plaintiff's alleged failure to sell motor fuel at his station for a few days.

It is significant to note that even though Plaintiff did not sell motor fuel for a few days at his Exxon Station, Plaintiff ensured that the premises always remained open for business, with respect to other aspects of the business such as the mechanics shop, the snack shop, and the sale of other motor fuel and automobile-related products.

By letter dated November 20, 2006 (the "Termination Notice"), attached and incorporated as Exhibit E, Exxon notified Peter Amaefule that it is terminating the franchise and franchise relationship effective December 8, 2006 "based upon [Peter Amaefule's] failure to operate [his] service station for the sale of motor fuel for at least seven (7) consecutive days, beginning on October 30, 2006 continuing through and possibly beyond November 19, 2006." The Termination Notice also indicates that the termination is based on "[Peter Amaefule's] violation of Articles 2.1 and IX of the Franchise Agreement, which requires [Plaintiff] to use [his] best efforts to maximize the sale of ExxonMobil's motor fuel products at [Plaintiff's] station."  The Termination Notice further provides that "[p]ursuant to Article XIV of the Franchise Agreement and Sections 2802(b)(2)(A), 2802(b)(2)(C) of the PMPA, Exxon hereby terminates its

Franchise Agreement, franchise, and franchise relationship with you ..." The Termination Notice states that the termination is "final and irrevocable."

## ARGUMENT

## LEGAL STANDARD

### A. SUMMARY JUDGMENT

A party is entitled to summary judgment where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will have the burden of proof at trial." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). Once the movant demonstrates the absence of a material fact, the nonmovant must go beyond the pleadings and produce specific facts showing that there is a genuine issue for trial. **See Celotex**, 477 U.S. at 325.

### B. PMPA

In 1978, Congress enacted Title I of the PMPA to protect petroleum franchisees from arbitrary termination or nonrenewal of their franchises. **See Barnes v. Gulf Oil Corp.**, 795 F.2d 358, 360 (4th Cir. 1986) **("Barnes I**"). Central to the concern of Congress was the use by franchisors of contract termination as a remedy for contract violations. As the legislative history indicates:

> Commonly the franchisor is able to capitalize on his disparity of bargaining power to obtain great flexibility with respect to his rights to terminate the contractual relationship. As a result, termination of franchise agreements during the term as a remedy for contract violations has been repeatedly utilized.

4

S. Rep. No. 731, 9th Cong., 2nd Sess. 18, reprinted, 1978 U.S. Code Cong. & Admin. News 873, 875-77. Congress enacted the PMPA to protect franchisees "from arbitrary or discriminatory termination or non-renewal of their franchises." S. REP. No. 95-731, at 15 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873, 874. "Numerous allegations have been made before congressional committees investigating petroleum marketing problems that terminations and non-renewals, or threats of termination or non-renewal, have been used by franchisors to compel franchisees to comply with marketing policies of the franchisor." *Id.* at 17, 1978 U.S.C.C.A.N. at 876. In light of the disparity of bargaining power disadvantaging the franchisee, Congress limited the situations in which a franchisor may terminate or fail to renew an agreement. The PMPA generally prohibits termination of a franchise or nonrenewal of a franchise relationship unless the franchisor both complies with the notification provisions of the statute and bases its decision upon a ground described in the statute. 15 U.S.C. § 2802(a). The PMPA was intended to remedy the disparity of bargaining power between franchisors and franchisees, and to preserve "the competitive influence of independent franchisees in the marketplace." **Roberts v. Amoco Oil Company**, 740 F.2d 602, 612 (8th Cir. 1984). **See also Ellis v. Mobil Oil Corp.**, 969 F.2d 754, 755 (9th Cir. 1993) (finding "overriding purpose of the PMPA is to protect the franchisee's reasonable expectation of continuing the franchise relationship").

As remedial legislation, the PMPA must be construed liberally, consistent with its primary goal of protecting franchisees. **See, Khorenian v. Union Oil Co. of Calif.**, 16 F.2d 533, 535 (9th Cir. 1985), cited with approval in **Barnes II**, 824 F.2d at 305. The PMPA seeks to achieve its goals by "specifically set [ting] forth the permissible grounds for termination or nonrenewal of franchise relationships, and bestow[ing] on federal

5

courts jurisdiction to remedy violations of the [PMPA]." ***Doebereiner v. Sohio Oil Co.***, 880 F.2d 329, 332 (11th Cir. 1989), *amended on den. of pet. for reh*., 893 F.2d 1274 (11th Cir. 1989). Under the PMPA, the termination of a petroleum franchise is barred unless the termination meets specific statutory justifications. ***See Darling v. Mobil Oil Corp.***, 864 F.2d 981, 984 (2nd Cir. 1989). As described in ***Bridges Enters, v. Exxon Co. U.S.A.***, 820 F.2d 123, 124 (5th Cir. 1987), "[t]he statute is exclusive: a franchisor may terminate or nonrenew a franchise only if its action is based on a permitted ground, and only if the stringent notification requirements of Section 2804 have been met." ***See also Barnes I***, 795 F.2d at 361. Where a franchisor bases its termination on a breach of the agreement, it must be shown that the termination was in fact based on the breach. ***Reyes v. Atlantic Richfield Co.***, 12 F.3d 1464, 1469 (9th Cir. 1993).

### PMPA's Strict Notice Requirement.

Under the PMPA, 90 days notice is the statutory norm. ***See***, 15 U.S.C. § 2804(a). Only in those extreme cases where giving 90 days notice is not reasonable is the franchisor excused from the 90 days requirement and in that instance, notice is to be given "on the earliest date on which furnishing of such notification is reasonably practicable." 15 U.S.C. § 2804(b). Courts have cautioned that "the 90-days notice ordinarily required by the PMPA should not be lightly excused." ***Wisser Co. Inc. v. Mobil Oil Co.***, 730 F.2d 54, 60 (2d Cir. 1984). Moreover, the "less than 90 days notice requirement is not an 'all or nothing' requirement that permits no notice at all when 90 days would be unreasonable." ***Zipper v. Sun Company, Inc***., 947 F. Supp. 62, 69 (E.D.N.Y. 1996).

### PMPA CASE LAW IN THE DISTRICT OF COLUMBIA CIRCUIT

Plaintiff's research has revealed only a handful of case in the D.C. Circuit dealing with the PMPA. *See e.g. Sawyer v. BP Oil, Inc*., 619 F.Supp. 1268 (D.C.D.C.,1985); *Anderson v. Chevron Corp.,* 933 F.Supp. 52 (D.C.D.C.,1996); Oparaocha v. Sun Co., Inc., 3 F.Supp.2d 4 (D.C.D.C.,1998); *Rising Micro, L.L.C. v. Exxon Mobil Oil Corp.*, 2006 WL 1193839 (D.D.C.); *Hoai v. Sun Refining & Marketing Co*., 1991 WL 242116 (D.D.C.); *Johnson v. Amoco Oil Co*., 790 F.Supp. 335 (D.C.D.C.,1992); *Razavi v. Amoco Oil Co.*, 41 F.3d 1549 (C.A.D.C.,1994), Razavi v. Amoco Oil Co., 833 F.Supp. 1 (D.D.C.,1993); *Lewis v. Exxon Corp.*, 716 F.2d 1398 (C.A.D.C.,1983). However, none of the above cases addressed the specific issues involved in this case nor do they involve facts identical or analogous to the facts of the present case. In short, Plaintiff's research did not reveal any mandatory legal authority from the D.C. Circuit dealing with the specific facts and issues involved in this case.

Also, it appears that the specific issue of what constitutes marketing premises has not been addressed by federal courts, at least, not in the context in which this issue is presented herein. While there are cases from other jurisdictions that might appear to be vaguely on point, these decisions are not binding on this Court. Thus, this Court is in as good a position as any other court to interpret the pertinent provisions of the PMPA in view of the facts of this case. This is especially true since there is no uniformity of interpretation among the Circuits with respect to the pertinent PMPA issues raised in this case.

**FRANCHISE TERMINATION  UNDER THE PMPA**

The **PMPA** governs when an oil company may **terminate** its **franchise** relationships. *See* 15 U.S.C. §§ 2801-2806. The **PMPA** authorizes **termination** of a

petroleum **franchise** if either of the following occurs: the franchisee fails to "comply with any provision of the **franchise**, which provision is both reasonable and of material significance to the **franchise** relationship ...;" or upon the "occurrence of an event which is relevant to the **franchise** relationship and as a result of which **termination** of the **franchise** or nonrenewal of the **franchise** relationship is reasonable." 15 U.S.C. §§ 2802(b)(2)(A) & (C).

The **PMPA** allows a franchisor to **terminate** a **franchise** relationship upon the occurrence of certain events. Twelve examples of events "relevant to the **franchise** relationship and as a result of which **termination** of the **franchise** or nonrenewal of the **franchise** relationship is reasonable" are listed in § 2802(c). In the present case, Exxon sought to terminate Plaintiff's franchise pursuant to PMPA, § 2802(c)(9)(A) ("failure by the franchisee to operate the marketing premises for . . . 7 consecutive days." PMPA, § 2802(c)(9)(A)).

**PLAINTIFF DID NOT FAIL TO OPERATE THE MARKETING PREMISES FOR SEVEN CONSECUTIVE DAYS**

In cases of statutory construction, the court is to interpret the words of the statute in light of the purposes Congress sought to serve." ***Chapman v. Houston Welfare Rights Organization***, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); ***see Veracka v. Shell Oil Co.***, 655 F.2d 445, 448 (1st Cir. 1981) (15 U.S.C. s 2802(c)(4)). "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provision of the whole law, and to its object and policy." United

***States v. Heirs of Boisdore***, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849); ***Philbrook v. Glodgett***, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975).

The relevant section of PMPA, 15 U.S.C § 2802(c)(9)(A), provides that the franchise may be terminated for "[the franchisee's] failure to operate the marketing premises for 7 consecutive days, on any shorter period of time, which, taking into account facts and circumstances, amounts to an unreasonable period of time not to operate." By its very language, the above section of the PMPA deals with complete failure to operate the marketing premises, not just failure to sell gasoline. Thus, if the franchisee continues to operate the marketing premises with respect to other aspects of the business (such as the sale of other items, the operation of the mechanics shop, etc), even if the franchisee fails to sell gasoline for a seven-day period, the above section of the PMPA does not mandate or even permit the termination of the franchise. There is nothing in the PMPA that specifically construes the operation of the marketing premises as restricted only to the sale of motor fuel.

The United State Congress, in 15 U.S.C § 2802(c)(9)(A), could have specifically provided that could be terminated based on "the franchisee's failure to sell motor fuel for 7 consecutive days, on any shorter period of time, which, taking into account facts and circumstances, amounts to an unreasonable period of time not to operate." Yet, Congress did not make such a provision. Congress's decision not to permit termination simply for failure to sell motor fuel is quite consistent with the express purpose behind the enactment of the PMPA – to protect to protect franchisees (who have inferior bargaining power to those of franchisors) from arbitrary termination or nonrenewal of their

9

franchises. In enacting the PMPA, Congress did not equate failure to operate the marketing premises with failure to sell motor fuel.

In the present case, even during the seven-day period of time which Exxon claims that Plaintiff did not sell motor fuel, Plaintiff continued to operate the marketing premises, marketing and selling other items which form part of the business. Plaintiff operate the marketing premises, including the provision of auto repair services which was and is a part of the Plaintiff's business at the marketing premises located at 4650 South Capitol Street, SE, Washington, DC 20032. Plaintiff hereby incorporates by reference the pertinent facts (relating to his operation of the marketing premises) as set forth in the Verified Complaint. Thus, there is no legal or factual basis for Exxon's claim that Plaintiff failed to operate the marketing premises for seven consecutive days. Since the termination of Plaintiff's franchise was based on an alleged failure to operate the marketing premises for seven consecutive days, Plaintiff is entitled to summary judgment because Plaintiff never ceased to operate the marketing premises even when he did not have gasoline for sale.

**Marketing Premises as used in the Franchise Agreement:**

At the outset, it must be pointed that the parties' Franchise Agreement is a Contract of adhesion which was solely and completely drafted by Exxon without input from Plaintiff. As such, the terms of the contract and any ambiguities contained therein must be construed strictly against the drafter and the risks of ambiguity fall on the drafter. See Williston on Contracts 4th—Forms §§ 32F:3, 32F:4. ***See also, Dureiko v. U.S.,*** 209 F.3d 1345 (Fed. Cir. 2000); ***Metric Constructors, Inc. v. National Aeronautics and Space Admin.***, 169 F.3d 747 (Fed. Cir. 1999).

Various provisions of the parties' Franchise Agreement clearly indicate that the term "marketing premises" encompasses much more than the areas and/or equipment connected with the purchase and sale of motor fuel. Portions of the Franchise Agreement indicate that the operation of the marketing encompasses much more than the purchase and sale of motor fuel.

For instance, the rent for the service station may be increased if Exxon rebuilds or certain items to the station such as "additional service station bay lifts" See Agreement, ExxonMobil's Guidelines (Attachment I), page 5. The Franchise Agreement distinguishes between marketing premises and the motor fuels business. See Article 9.4. The agreement also indicates that the operation of the related businesses are part and parcel of the Agreement. Thus, Exxon could seek termination based on a franchisees conduct on the premises that does not involve the sale of motor fuel. See Article 9.1.

In article 9.14 (b), the agreement prohibits certain conduct on the marketing premises. It would be absurd to reason that such prohibition only applies to the parts of the service station connected with the sale of motor fuel.

The meaning of the term "franchise" under the PMPA might be helpful determining what constitutes marketing premises. Within the meaning of the PMPA, a "franchise" consists of three core components: a contract to use the refiner's trademark, a contract for the supply of motor fuel to be sold under the trademark, and a lease of the premises at which the motor fuel is sold. *Barnes v. Gulf Oil Corp.,* 795 F.2d 358, 360 (4th Cir.1986) (citing S.REP. NO. 731, 95th Cong., 2d Sess. 17, 29 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873) (additional citations omitted).

The Senate Report on the PMPA reads in part: The term "franchise" is defined in terms of a motor fuel trademark license.... Secondary agreements, such as leases of real property or motor fuel supply agreements are incorporated in the definition of a franchise. Therefore the substantive provisions of this title, relating to the termination of a franchise or nonrenewal of the real estate lease or motor fuel supply agreement may not be circumvented by a termination or non-renewal of the real estate lease or motor fuel supply agreement which thereby renders the trademark license valueless." 1978 US Cong & Ad News, p. 888.

In *Atlantic Richfield Co. v. Brown,* No. 85-C-5131 (N.D.Ill. Oct. 21, 1985) [WESTLAW, 1985 WL 3316] the court held that Arco leases for the premises, gasoline, and mini-markets were so inextricably linked that coverage under the PMPA extended to the mini-market lease. Central to the court's finding of linkage was the fact that "termination of the premises lease automatically triggers termination of the mini-market agreement." *Id.*

## II. PLAINTIFF'S FAILURE TO SELL GASOLINE FOR A FEW DAYS WAS CAUSED BY FINANCIAL HARDSHIP WHICH WAS CAUSED, AT LEAST PARTIALLY BY EXXONMOBIL

Plaintiff alleges that sometime in November 2006, Exxon's practice of supplying old inventory of gasoline (at higher prices) to the Plaintiff when the competitors' prices are lower or much lower (which was discussed earlier), caused Plaintiff to lose a lot of money from the sale of the gasoline. As a result, for a few days, Plaintiff did not have enough funds to immediately order new gasoline supplies from the Exxon to replenish Plaintiff's inventory and Exxon refused to supply the gasoline to the Plaintiff on credit.

Thus, Exxon is a direct and/or indirect cause of the Plaintiff's alleged failure to sell motor fuel at his station for a few days.

As shown in the accompanying Plaintiff affidavit, Exxon caused a portion of Plaintiff's financial hardship. Thus, there was no failure (as defined in the PMPA). Because there was no failure under the PMPA, there was no basis for Exxon to seek to terminate the frqanchise.

**III. Exxon failed to Comply With The Notice Provisions Of Section 2804(A)(2) And 2804(B)(1) Of The PMPA.**

The foregoing provisions of 2804 provide for ninety (90) days notice of termination except in circumstances where it would prove unreasonable for the franchisor to provide ninety (90) days notice. No such circumstance exists here. The alleged failure to sell gasoline for seven consecutive days no longer exists. The violation, if there was one, has been cured. There was and is no current emergency mandating a notice period of less than ninety (90) days. Thus, the notice given by the Defendant is deficient under the terms of the PMPA.

Plaintiff has been a solid Exxon dealer for over fifteen (15) years. Plaintiff has persevered as a gas station franchisee through difficult times while remaining loyal to the Exxon brand and using his best efforts to market Exxon products. His business operations at the marketing premises during this time have been conducted without much incident or customer complaints. Yet, the Defendant gave Plaintiff less than 30 days notice for the termination of a franchise he has operated for over fifteen years. Defendant's course of action in this instance has been taken in wanton disregard of Plaintiff's tenure of more

than fifteen years of loyal service, and in wanton disregard of the notice provisions of the PMPA.

There is no dispute that Exxon did not provide the Plaintiff with the 90-day notice. Plaintiff is therefore entitled to summary judgment on this issue of notice.

### IV. Exxon's Failure to Give 90 Days Notice was not Reasonable

Where a franchisor elects to proceed under § 2804(b) to provide less than 90 days notice upon the occurrence of an "event", the franchisor must establish the reasonableness of its decision to dispense with the 90 days notice requirement. In determining the reasonableness of less than 90 days' notice, the issue of "reasonableness" is necessarily an issue of fact. **See Roberts v. Amoco Oil Co.**, 740 F.2d 602, 606 (8th Gir. 1984) (In discussing another section of the PMPA, court found that the legislative history of PMPA suggests that Congress intended to favor franchisees by treating "reasonableness" determination as an issue of fact). The term "reasonable" in the PMPA has been interpreted to mean that which is "just, fair or proper." **Doebereiner v. Sohio Oil Co.**, 880 F.2d 329, as amended on denial of rehearing, 893 F.2d 1275 (11th Cir. 1990).

**ADVERSE INFERENCE RULE:**

Plaintiff requested documents from Exxon relating to its pricing policies and practices but Exxon failed to provide such documents. Thus, this Court should apply the adverse inference rule because the documents are in Exxon exclusive control. Thus, the issue of Exxon's predatory pricing should be resolved in Plaintiff's favor.

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff's Motion for Summary Judgment. In view of the parties' joint motion for extension of time, Plaintiff

also prays this Court to permit the Plaintiff to file a more complete motion for summary judgment not later than March 1, 2007.

Respectfully submitted,

_____
PETER C. IBE, D.C. BAR # 481265
1717 K Street, NW,
Suite 600
Washington, DC 20036
Phone: (202) 276-7662


_____
Victor Mba-Jonas, Esq., D.C. BAR # 452042
8020 New Hampshire Avenue,
Suite 130, Adelphi, MD 20783
Phone: (301) 431-0333

Counsel for Plaintiff