IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER AMAEFULE                                )
                                              )
            Plaintiff,                        )
                                              )
v.                                            )Civil Action No: 1:06-cv-02087-RWR
                                              )
EXXONMOBIL OIL CORPORATION                    )
                                              )
            Defendant.                        )
_____              )

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT HIS MOTION FOR SUMMARY JUDGMENT

Plaintiff, Peter Amaefule, through undersigned counsel, Peter C. Ibe, Esquire, and Victor Mba-Jonas, Esquire, pursuant to Fed. R. Civ. P. 56 and LCvR 7(h) and 56.1 and files this memorandum of law in support of his motion for summary judgment. Plaintiff incorporates by reference the Verified Complaint and exhibits, the motion for preliminary injunction and supporting memorandum, and plaintiff's motion for summary judgment and the attached affidavit, Plaintiff's opposition to Defendant's motion for summary judgment.

## ARGUMENT

### I.    PLAINTIFF DID NOT FAIL TO OPERATE THE MARKETING PREMISES

In its submissions, Defendant continues to skirt the issue of what constitutes the "marketing premises" as well as what constitutes "operation of the marketing premises" under the PMPA. However, Plaintiff maintains that the interpretation of these terms is at the center of this case. In interpreting the language of a statute, a court must look to the

plain language of the statute to ascertain its meaning. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030-31, 103 L.Ed.2d 290 (1989) (" 'The plain meaning of legislation should be conclusive, except in rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' ") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

Section 2802(b)(2)(C) of the PMPA is clear on its face. A literal reading and application of that subsection does not show that a franchisee's franchise can be terminated simply for failing to sell motor fuel. Under Section 2802(b)(2)(C), termination is permitted only for failure to operate the marketing premises for at least seven consecutive days. As Plaintiff has convincingly argued in prior submissions, the term "operation of the marketing premises" is not the same as the "marketing or sale of motor fuel." No where in the PMPA did Congress use these two terms interchangeably.

Further, a literal interpretation of the Section 2802(b)(2)(C) according to its plain meaning would further the Congress intent in drafting the PMPA – namely, the protection of retail franchisees. By contrast, interpreting the Section 2802(b)(2)(C) in a restrictive manner to only apply to the sale of motor fuel would produce a result demonstrably at odds with the intentions of Congress because it would make easier for franchisors to terminate retail franchisees, while ignoring the specific statutory language.

Other subsections of the PMPA show that interpreting the term "operation of the marketing premises" to only apply to the sale of motor fuel would produce demonstrably absurd results that would be at odds with the intentions of Congress.

Accordingly, Plaintiff maintains that since he continued to operate the mechanics shop, the snack shop and other aspects of the marketing premises, he did not fail to operate the marketing premises for seven consecutive days. Accordingly, there is no basis for the termination of Plaintiff's franchise under Section 2802(b)(2)(C).

## II.     THERE WAS NO FAILURE BY PLAINTIFF IN THIS CASE:

Defendant fails to grasp the simple fact that Plaintiff's argument on the issue of "failure" applies to both Section 2802(b)(2)(C), and Section 2802(b)(2)(A). Simply put: if there was no failure by Plaintiff, then termination cannot be proper under both Section 2802(b)(2)(C) and Section 2802(b)(2)(A) because both sections require a finding of failure on the part of the franchisee. Based on its misconception of Plaintiff's argument on the issue of failure, Defendant erroneously argues that Plaintiff is conceding that termination was proper under Section 2802(b)(2)(A). Plaintiff has never made such a concession.

Plaintiff has demonstrated through his submissions that ExxonMobil was a cause of his inability to have gasoline for sale during the period at issue. Plaintiff maintains that ExxonMobil failed to make timely and periodic repairs and renovations of his gas station, causing Plaintiff to lose customers, lose business, and money. Indeed, Plaintiff maintains that over the past few years ExxonMobil has expended enormous resources in the repair and renovation of other ExxonMobil stations in the surrounding areas. Yet, ExxonMobil has failed to make such repairs and renovations in Plaintiff's gasoline station.  It is beyond argument that allowing Plaintiff's station to fall into a state of disrepair would affect Plaintiff's business as well as its profitability. Exxon's failure progressive failure to

make such repairs and renovations over the years helps to explain the declining volume of Plaintiff operations/sales over those years.

Other examples of Exxon's role in causing Plaintiff to lose money is Exxon's failure to adapt is gasoline supply system to Plaintiff's changed needs and changed business realities. Plaintiff's gasoline station has three underground storage tanks: the 10,000; 8,000; and 6,000 gallon tanks. Each tank is used to store a different grade of gasoline (regular, mid-grade, and supreme). For a quite some time Plaintiff was selling more "premium" gasoline by volume than the other types of gasoline. Thus, Exxon was delivering and storing "premium" gasoline in the 10,000 gallon tanks. This made business sense since Plaintiff was selling more of that grade of gasoline. However, business realities later changed: Plaintiff was now selling more "regular" grade gasoline than the other types of gasoline. Plaintiff promptly informed Exxon of this change and requested that Exxon supply more "regular" grade gasoline than the other grades and that Exxon store the regular gasoline in the 10,000-gallon tank. For quite a long time, Exxon ignored Plaintiff's request and continued to supply more "premium" gasoline as it has been doing. Exxon's refusal to adapt to the new business reality caused Plaintiff to run out of the fast-selling regular gasoline on several occasions. It also caused Plaintiff to be stuck with large quantities of the now slow-selling premium. The end result of Exxon's refusal to adapt to the new business reality is that Plaintiff lost a lot of money and a lot of business. See Plaintiff's Exhibit 1.

Another example of Exxon's causation of Plaintiff's inability to sell gasoline for seven consecutive days is Exxon's practice of supplying and dumping unwanted and unneeded higher priced gasoline to Plaintiff's, while disregarding its automated supply

system and disregarding its well-established supply practice. This predatory pricing scheme by Exxon has been discussed in more detail in prior filings. See Plaintiff's Exhibit 1.

The above are only non-exhaustive examples of Exxon's conduct which have significantly contributed to Plaintiff's loss of money and loss of business. The fact the Exxon contributed to Plaintiff's loss of money and loss of business conclusively establishes that Exxon was a cause of Plaintiff's failure to have money for the purchase of gasoline on those days in which Plaintiff was unable to sell gasoline. Accordingly, there was no failure in this case because Exxon is a cause of Plaintiff's failure to sell gasoline. Plaintiff has no control over Exxon's conduct; Plaintiff has no control over Exxon's decision to ignore changing business realities; Plaintiff has no control over Exxon's supply of gasoline, or the frequency of such supplies; Plaintiff has no control over Exxon's pricing schemes; and Plaintiff has no control over Exxon's decision not to repair and renovate his gasoline station. Therefore, it is clear the Exxon is cause of Plaintiff's inability to sell gasoline during the relevant and Plaintiff had no control over Exxon's conduct.

### III. PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF NOTICE BECAUSE EXXON FAILED TO COMPLY WITH THE NOTICE PROVISIONS OF SECTION 2804(A)(2) AND 2804(B)(1) OF THE PMPA.

Pursuant to section 2804(A)(2) and section 2804 (B)(1) of the PMPA, a franchisor is required to furnish a franchisee with (90) days notice of termination except in circumstances where it would prove unreasonable for the franchisor to provide ninety (90) days notice. No such circumstance exists here. The alleged failure to sell gasoline for

seven consecutive days no longer exists. The violation, if there was one, has been cured. There was and is no current emergency mandating a notice period of less than ninety (90) days. Thus, the notice given by the Defendant is deficient under the terms of the PMPA.

Plaintiff has been a solid Exxon dealer for over fifteen (15) years. Plaintiff has persevered as a gas station franchisee through difficult times while remaining loyal to the Exxon brand and using his best efforts to market Exxon products. His business operations at the marketing premises during this time have been conducted without much incident or customer complaints. Yet, the Defendant gave Plaintiff less than 30 days notice for the termination of a franchise he has operated for over fifteen years. Defendant's course of action in this instance has been taken in wanton disregard of Plaintiff's tenure of more than fifteen years of loyal service, and in wanton disregard of the notice provisions of the PMPA.

There is no dispute that Exxon did not provide the Plaintiff with the 90-day notice. Plaintiff is therefore entitled to summary judgment on this issue of notice.

Exxon failed to establish that it gave notice to Plaintiff at earliest practicable time as required by the PMPA. "In circumstances in which it would not be reasonable for the franchisor to furnish notification [ninety days prior to termination] ... [the] franchisor shall furnish notification to the franchisee affected thereby on the earliest date [that] ... is reasonably practicable." 15 U.S.C. § 2804(b)(1)(A). Exxon's submissions have failed to establish that it gave Plaintiff notice of termination on the earliest date [that] ... is reasonably practicable.

Exxon's argument on reasonableness also shows a misunderstanding of the notice provisions. Under the notice provisions, Exxon burden is to affirmatively establish that it

would be unreasonable to provide the 90-day: Exxon's burden is not simply to establish that its decision to provide less than 90 days notice was reasonable. ***See Wisser Co. v. Mobil Oil Corp.,*** 730 F.2d 54, 60 (2d Cir.1984)(The franchisor must give ninety days' notice to terminate a franchise relationship unless that period of time is "unreasonable.")

In response to Defendant's argument in favor of per se reasonableness, Plaintiff notes that such arguments have been soundly rejected in many jurisdictions. There is no question that at least some of the § 2802(c) relevant event exceptions mandate some form of judicial scrutiny. ***See Sun Refining & Mktg. Co. v. Rago***, 741 F.2d 670, 673 (3d Cir.1984) ("[I]n light of the Act's specific intent to benefit franchisees, we decline to construe § 2802(c) as a *per se* termination rule favoring franchisors."); ***Marathon Petroleum v. Pendleton***, 889 F.2d 1509, 1512 (6th Cir.1989) ("[W]e must scrutinize the reasonableness of terminations even when an event enumerated in § 2802(c) has occurred.").

**WHEREFORE**, Plaintiff respectfully requests the Court to grant his Motion for Summary Judgment and deny ExxonMobil's Motion for Summary Judgment.

Respectfully submitted,

_____

PETER C. IBE, D.C. BAR # 481265
1717 K Street, NW,
Suite 600
Washington, DC 20036
Phone: (202) 276-7662

_____

Victor Mba-Jonas, Esq., D.C. BAR # 452042
8020 New Hampshire Avenue,
Suite 130, Adelphi, MD 20783
Phone: (301) 431-0333
Counsel for Plaintiff.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER AMAEFULE )
)
Plaintiff, )
)
v. )
)Civil Action No: 1:06-cv-02087-RWR
)
EXXONMOBIL OIL CORPORATION )
)
Defendant. )
)
_____ )

## AFFIDAVIT OF PETER AMAEFULE

I, Peter Amaefule, declare as follows under the penalty of perjury:

I am the named Plaintiff in the present action.

Over the past few years ExxonMobil has repaired and renovated of other ExxonMobil stations in the surrounding areas.

Yet, ExxonMobil has failed to make such repairs and renovations in my gasoline station.

For quite a long time, Exxon ignored my request and continued to supply more "premium" gasoline as it has been doing. Exxon's refusal to adapt to the new business reality caused me to run out of the fast-selling regular gasoline on several occasions. It also caused me to be stuck with large quantities of the now slow-selling premium.

The end result of Exxon's refusal to adapt to the new business reality is that I lost a lot of money and a lot of business.

Another example of Exxon's cause of my inability to sell gasoline for seven consecutive days is Exxon's practice of supplying and dumping unwanted and unneeded higher priced gasoline to my station, while disregarding its automated supply system and disregarding its well-established supply practice.

I have no control over Exxon's conduct; I have no control over Exxon's decision to ignore changing business realities; I have no control over Exxon's supply of gasoline, or the frequency of such supplies; I have no control over Exxon's pricing schemes; and I have no control over Exxon's decision not to repair and renovate my gasoline station.

I declare under penalty of perjury that the foregoing statements above are true and accurate to the best of knowledge, information and belief.

_____
Peter Amaefule

Executed this 22nd day of March, 2007

2