## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER C. AMAEFULE, )<br><br>Plaintiff, )<br><br>v. )<br><br>EXXONMOBIL OIL CORPORATION, )<br><br>Defendant. ) | Case No:  1:06-cv-02087-RWR |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant ExxonMobil Oil Corporation, ("ExxonMobil") hereby submits a recent

decision from the United States District Court for the Northern District of California in *Equilon*

*Enterprises, LLC v. Shahbazi* ("*Shahbazi*"), No. C 06-05818 JF, 2007 U.S. Dist. LEXIS 28047

(N.D. Cal. Apr. 4, 2007) (Exh. A hereto).  In *Shahbazi*, a Shell franchisee sued the franchisor

(Equilon), claiming that Equilon's termination of the franchisee's lease violated the Petroleum

Marketing Practices Act ("PMPA").  *Id.* at *1.  The Court granted summary judgment for the

franchisor and held that the termination was valid under the PMPA because, *inter alia*, of the

franchisee's "failure to sell fuel for seven consecutive days."  *Id.* at *1-2.  The franchisee moved

for reconsideration of that ruling, and the Court denied the franchisee's motion.  *Id.* at *2.

ExxonMobil also respectfully submits the underlying (unpublished) summary judgment

ruling in *Shahbazi*.  (Exh. B hereto).  On page 8 of that Order, the Court noted that "[t]he failure

to 'operate the marketing premises' includes failing to sell gas" and therefore concluded that "the

failure to sell gas for seven consecutive days constitutes grounds for termination under the . . .

PMPA."  *Shahbazi*, No. C 06-05818 JF, Order Granting Pls.' Mot'n for Summ. Judgm., slip op.

at 8 (N.D. Cal. Mar. 13, 2007).

ExxonMobil believes these decisions will be of assistance to the Court in ruling upon

ExxonMobil's Motion for Summary Judgment (Dkt. 18), and, in particular, why ExxonMobil's

termination of plaintiff's PMPA franchise was proper.

Dated:  May 17, 2007                         Respectfully submitted,


                                    s/Brian A. Howie
                        _____
                        Brian A. Howie
                        Bar No.:  459329
                        Rena Andoh
                        Bar No.: 500287
                        HOWREY LLP
                        1299 Pennsylvania Ave., N.W.
                        Washington, D.C.  20004
                        Telephone:  (202) 783-0800
                        Facsimile:  (202) 383-6610

                        **Attorneys for Defendant ExxonMobil Oil
                        Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Peter C. Ibe
1629 K St., N.W., Suite 300
Washington, D.C.  20006

Victor Mba-Jonas
8020 New Hampshire Ave., Suite 130
Adelphi, MD  20783

                              s/Brian A. Howie
                         _____
                           BRIAN A. HOWIE

3 of 10 DOCUMENTS

**EQUILON ENTERPRISES LLC, a Delaware Corporation, d/b/a SHELL OIL PRODUCTS US, Plaintiff, v. MEHDI SHAHBAZI, et al., Defendants.**

**Case Number C 06-05818 JF**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

*2007 U.S. Dist. LEXIS 28047*

<u>April 4, 2007, Decided</u>
<u>April 4, 2007, Filed</u>

**NOTICE:** [*1] NOT FOR CITATION

**PRIOR HISTORY:** *Equilon Enters. LLC v. Shahbazi, 2007 U.S. Dist. LEXIS 12370 (N.D. Cal., Feb. 7, 2007)*

**COUNSEL:** For Equilon Enterprises LLC, a Delaware Limited Liability Company doing business as Shell Oil Products US, Plaintiff: Colin C. West, LEAD ATTORNEY, McCutchen, Doyle, Brown & Enersen, LLP, San Francisco, CA.; James Severson, Rosanne L. Mah, Bingham McCutchen LLP, San Francisco, CA.

For Bal Winder Singh, an individual also known as Ben Pannu, Defendant: Gary Ernest Gray, Gray Law Office, Monterey, CA.

Mehdi Shahbazi, an individual, Defendant, Pro se, Marina, CA.

**JUDGES:** JEREMY FOGEL, United States District Judge.

**OPINION BY:** JEREMY FOGEL

**OPINION:**

ORDER DENYING DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT

[Docket No. 82]

On March 13, 2007, the Court granted the motion of Plaintiff Equilon Enterprises, LLC ("Equilon") for summary judgment against Mehdi Shahbazi ("Shahbazi"), Balwinder Singh (also known as Ben Pannu) ("Pannu"), and the Shahbazi-Pannu partnership doing business as Salinas Shell ("the partnership"). The Court granted summary judgment for Equilon on the grounds that the Lease was validly terminated under both the Petroleum

Marketing Practices Act ("PMPA") and the terms of the Lease itself because of (i) the partnership's failure to pay rent, (ii) the partnership's [*2] failure to sell fuel for seven consecutive days, and (iii) Pannu's withdrawal from the partnership. The Court also found that there is no genuine issue of material fact as to Shahbazi's assertions that Equilon terminated the Lease for improper reasons or breached its duty to act in good faith and within the course of business. On March 13, 2007, the Court entered judgment in favor of Equilon. On March 22, 2007, Shahbazi filed a motion to alter or amend the order granting Equilon's motion for summary judgment pursuant to *Federal Rule of Civil Procedure 59(e)* ("*Rule 59(e)*"). Equilon opposes the motion. The Court concludes that the matter is appropriate for decision without oral argument. *See* Civ. L.R. 7-1(b).

A motion for reconsideration of summary judgment may be brought pursuant to *Federal Rule of Civil Procedure 59(e)*. *School District No. 1J, Multnomah County v. ACandS, 5 F.3d 1255, 1262 (9th Cir. 1993)*; *Fuller v. MG. Jewelry, 950 F.2d 1437, 1442 (9th Cir. 1991)*. The decision whether to grant reconsideration is committed to the sound discretion of the district court and [*3] will be reviewed only for abuse of discretion. *Multnomah, 5 F.3d at 1262*. Reconsideration pursuant to *Rule 59(e)* is appropriate if: (1) the district court is presented with newly discovered evidence; (2) the district court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law. *Id. at 1263*. The repetition of arguments which the district court already considered and rejected is not a proper basis for reconsideration. *Fuller, 950 F.2d at 1442*.

Shahbazi asserts that there are triable issues of fact regarding the circumstances surrounding Equilon's termination of the March 2006 Retail Facility Lease ("the Lease") and its alleged bad faith in its business relationship with Shahbazi. Motion 1. Shahbazi also asserts that

the issue of unpaid rent was pretextual and that under the PMPA Equilon may not terminate its franchisee in bad faith. Motion 3. However, Shahbazi does not present any new evidence suggesting that the Lease was terminated improperly or that Equilon breached its duty to act in good faith and within the course of business.

Shahbazi urges the Court to analyze [*4] its ruling in an earlier case, *Shahbazi et al v. Equilon Enterprises, LLC et al*, CV 03-00212, in deciding this motion, arguing that the ruling establishes that there are triable issues of fact and that Equilon has exercised bad faith in the present case. Motion 1. In the 2003 case, the Court granted judgment for Equilon, and that determination was affirmed by the Ninth Circuit. West Decl. at Ex. A; West Decl. at Ex. H. Nothing in that case provides a basis for granting the instant motion. Shahbazi also requests that the Court consider the formal judgment entered in October 2003, but he offered no legal or factual basis for doing so.

The Court repeatedly has granted Shahbazi extensions of time to oppose Equilon's efforts to obtain relief, and in consideration of Shahbazi's pro se status, has considered the arguments in Shahbazi's opposition papers with great liberality. There is nothing in the instant motion that has not been presented to the Court previously in Shahbazi's briefings and oral argument. Shahbazi fails to identify a decision by the Court that was manifestly unjust, and there has not been an intervening change in controlling law. Accordingly, the motion is denied. [*5]

IT IS SO ORDERED.

DATED: April 4, 2007

JEREMY FOGEL

United States District Judge

**E-filed 3/13/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

EQUILON ENTERPRISES LLC, a Delaware
Corporation, d/b/a SHELL OIL PRODUCTS US,

        Plaintiff,

        v.

MEHDI SHAHBAZI, et al.,

        Defendants.

Case Number C 06-05818 JF

ORDER[1] GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

[re. docket no. 54]

     Plaintiff Equilon Enterprises, LLC ("Equilon") moves for summary judgment against
Mehdi Shahbazi ("Shahbazi"), Balwinder Singh (also known as Ben Pannu) ("Pannu"), and the
Shahbazi-Pannu partnership doing business as Salinas Shell ("the partnership"), (collectively
"Defendants"). Shahbazi opposes the motion. For the reasons set forth below, the motion will be
granted.

## I. BACKGROUND

     On September 21, 2006, Equilon filed the instant action against Shahbazi, Pannu, and the
partnership. Equilon seeks declaratory relief, injunctive relief and damages arising from
Equilon's termination of Defendants' lease of the Shell service station located at 417 North Main

---

[1] This disposition is not designated for publication and may not be cited.

1    Street in Salinas, California (the "Salinas Station") and Shahbazi's refusal to vacate.

2    Shahbazi entered into a franchise relationship with Equilon regarding the Salinas Station in 1994

3    by means of a fuel supply agreement and a lease agreement. Compl. ¶ 11. In 1995 Shahbazi and

4    Pannu became partners in the franchise. Answer ¶ 11. In 2002, Equilon assigned its interest in

5    the fuel supply agreement to Peninsula Petroleum, LLC ("Peninsula") which proceeded to supply

6    the Salinas Station with fuel. Compl.¶ 12-13. Equilon retained the lease with Shahbazi and

7    Pannu. *Id.* ¶ 15. In January of 2006, Shahbazi and Pannu executed a new fuel supply agreement

8    with Peninsula, the Retail Sales Agreement ("RSA"). Castelo Decl. at Ex. A. The RSA

9    designates Pannu as the "Key Management Person." *Id.* Under the partnership, Pannu has a

10   50% interest in the Salinas Station; he also received a salary for his position as station manager.

11   Answer ¶ 16. In March of 2006, Shahbazi and Pannu executed a new Retail Facility Lease ("the

12   Lease") with Equilon. Calhoun Decl. at Ex. C.

13        Under the Lease, Defendants paid monthly rent by means of an electronic funds transfer

14   ("EFT") whereby Equilon submitted electronic drafts to Defendants' bank account authorizing

15   the transfer of funds to Equilon's account. Troxell Decl. ¶ 3. On April 15, 2006, Equilon's

16   attempted EFT for the April rent was returned for insufficient funds. *Id.* ¶ 4. Equilon sent

17   Defendants two notices requesting payment of the April rent, on April 21 and May 4,

18   respectively. *Id.* at Ex. A, Ex. B. No rent was paid, and on May 15, 2006, Equilon's attempted

19   EFT for the May rent also was returned for insufficient funds. *Id.* ¶ 5. On June 1, 2006, Equilon

20   notified Defendants that the Lease would be terminated if the back rent was not paid. Calhoun

21   Decl. at Ex. A. On June 6, 2006, Equilon sent Defendants a notice terminating the Lease

22   effective September 8, 2006, ninety days after the date of the notice. Eaves Decl. at Ex. B.

23   Attempted EFTs for rent in June, July and August were returned with an indication that the

24   Defendants' bank account had been closed. Troxell Decl. ¶ 6.

25        Under the RSA, Defendants also utilized EFTs to pay Peninsula for fuel after it was

26   delivered. Castelo Decl. ¶ 4. On eight occasions in 2006, Peninsula's attempted EFTs were

27   returned for insufficient funds. *Id.* ¶ 7. As a result, on April 19, 2006, Defendants were placed

28

2

1  on "COD" status, meaning that they were required to pay Peninsula with a cashier's check prior

2  to the delivery of fuel. *Id.* Defendants paid for a number of fuel deliveries in this manner. *Id.* ¶

3  8. Peninsula electronically monitored the Salinas Station fuel tanks, and on June 9, 2006, when

4  the tanks were nearly empty, Peninsula's attempts to arrange for a delivery were met with no

5  response. *Id.* ¶ 9. According to Peninsula's electronic monitoring, the Salinas Station ran out of

6  fuel on June 10, 2006. *Id.* ¶ 10. The RSA provides that the agreement may be terminated if the

7  Retailer fails to maintain a sufficient amount of all grades of Seller's branded gasoline or the

8  Retailer fails to operate the Retailer's station for seven consecutive days. *Id.* at Ex. A; RSA

9  22(a)(3)(viii). On June 19, 2006, Peninsula sent Defendants a notice terminating the RSA

10  effective ninety days later, on September 18, 2006. *Id.* at Ex. D.

11  The Lease provides that the Lessor may terminate the Lease if the Lessee fails to

12  operate the premises for seven consecutive days. Calhoun Decl. at Ex. C; Lease § 18(a)(3)(viii).

13  On June 21, 2006, Equilon sent Defendants a supplemental termination notice, citing failure to

14  sell fuel as an additional ground for termination. Eaves Decl. at Ex. C. The notice stated that the

15  original termination date of September 8, 2006, remained in effect. *Id.*

16  On June 2, 2006, prior to Equilon's first termination notice but after Equilon's notice that

17  the Lease would be terminated if rent was not paid, Pannu's counsel sent Equilon a letter stating

18  that Pannu would surrender his interest in the Salinas Station unless it was possible for Equilon

19  and Pannu to make an arrangement whereby Pannu would operate the station without Shahbazi.

20  West Decl. at Ex. D. Equilon did not respond to the letter. Mot. Prelim. Inj. at 7. On June 13,

21  2006, after the first termination notice had been sent, Pannu's counsel again wrote to Equilon

22  stating that Pannu would surrender the keys to the station on June 14, 2006. West Decl. at Ex. E.

23  The letter stated that it was up to Equilon and Shahbazi to determine the proper recipient of the

24  surrender. *Id.* Equilon sent a representative to the Salinas Station, but he ultimately departed

25  without any keys. Mot. Prelim. Inj. at 7. Shahbazi alleges that he found keys the next morning,

26  but that neither he nor Pannu was aware beforehand if the station had keys because it was open

27  twenty-four hours a day and never locked. Object. to Prentiss Decl. ¶ 1.

28  The Lease provides that if the Lessee is comprised of more than one person, then the acts

3

1    of each person are the acts of the Lessee.  Eaves Decl. at Ex. D; Lease § 24.  Additionally, if the

2    Lessee is a business entity, the acts of the "Key Management Person" will be considered the acts

3    of the Lessee.  *Id.*  The Lease also allows for termination by the Lessor if the RSA is terminated.

4    *Id.* at § 18(a)(5).  On July 13, 2006, Equilon sent Defendants a second supplemental termination

5    notice citing Pannu's abandonment of the Salinas Station and Peninsula's termination of the

6    RSA as two additional grounds for termination, with the effective date to remain September 8,

7    2006.  Eaves Decl. at Ex. D.

8          Shahbazi asserts that Equilon and Peninsula are holding more than $30,000 of

9    Defendants' money from Salinas Station customers who paid by credit card.  Opp'n ¶ 6.  When a

10   customer buys gasoline at the Salinas Station with a credit card, the money from that purchase

11   goes to Equilon, which then electronically transfers the money to Peninsula.  Boyd Decl. ¶ 2.

12   Peninsula credits the amount received against any of the station's outstanding fuel invoices, and

13   any remaining funds are then electronically deposited into the station's bank account.  *Id.*  When

14   Defendants were placed on COD status with Peninsula, Pannu instructed Peninsula to hold the

15   station's credit card receipts and apply them to the station's deposits for future fuel deliveries, so

16   that Defendants would then pay the difference between the credit card receipts and the total fuel

17   delivery amount with a cashier's check  *Id.* ¶ 4; Ex. A.  Under this agreement with Pannu, after

18   the Salinas Station stopped receiving fuel deliveries in June, 2006, Peninsula held a total credit

19   card balance for the Salinas Station of $37,563.24.  *Id.* ¶ 8.  Equilon alleges that in June, after

20   Pannu abandoned the Salinas Station, Pannu asked Peninsula to transfer any remaining credit

21   card balances to Equilon as back rent.  Supp. Castelo Supp. Decl. ¶ 2.  Equilon also alleges that

22   in June, Shahbazi asked Peninsula to send any remaining credit card balances to him in the form

23   of a cashier's check.  *Id.* ¶ 3.  In light of the conflicting claims, Peninsula filed an interpleader

24   action in the Monterey Superior Court and deposited the funds with the clerk of the court.  Supp.

25   West Decl. at Ex. K.  On October 3, 2006, the superior court ruled that the interpleader was

26   proper, and Peninsula was discharged from all liability arising from the funds.  *Id.* at Ex. L.

27         On September 22, 2006, Equilon filed a motion for a preliminary injunction seeking to

28   (1) compel Defendants to surrender and vacate the Salinas Station and enjoin Defendants from

4

1  remaining on or re-entering the premises, pending the determination of this action; (2) compel

2  Defendants to return to Equilon all of Equilon's equipment, fixtures, and other property located

3  at the premises; and (3) compel Defendants to remove all of their personal property and

4  equipment located at the premises, without injury to the premises or any of Equilon's property

5  thereon.  The Court granted Equilon's motion for a preliminary injunction on December 5, 2006.

6  On December 7, 2006, Equilon moved for entry of default against the partnership.  On December

7  18, 2006, Shahbazi filed an emergency motion for leave to file a motion for reconsideration and

8  requesting that the default judgment entered against the partnership be set aside.  On December

9  19, 2006, the Court denied the emergency motion for leave to file a motion for reconsideration,

10 but ordered Equilon to confer with Shahbazi and take all reasonable steps to allow Shahbazi to

11 collect his inventory within two weeks of the issuance of the order.

12      The Court has granted Shahbazi, who is litigating this matter pro se, two extensions of

13 time to file necessary documents in the instant case.  On November 9, 2006, the Court granted

14 Shahbazi's motion to extend time to file an answer.  On November 14, 2006, the Court granted

15 Shahbazi's motion for extension of time to file opposition to the motion for a preliminary

16 injunction.

17      Equilon filed the instant motion for summary judgment on December 19, 2006.  On

18 December 22, 2006, Equilon filed a motion for default judgment against the partnership.  On

19 February 7, 2007, the Court denied Shahbazi's motion for extension of time to file opposition to

20 the instant motion, and it also granted the default judgment.  Shahbazi subsequently filed

21 opposition to the instant motion.[2]  The Court heard oral argument on February 9, 2007.

22                          **II. LEGAL STANDARD**

23      A motion for summary judgment should be granted if there is no genuine issue of

24 material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

25

26  ─────────────

27    [2]  The opposition was due on January 19, 2007.  Shahbazi filed his opposition to the
instant motion on February 6, 2007.   In the interests of justice, the Court has reviewed all of the

28 documents submitted by Shahbazi.

Case No. C 06-05818 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial.  *Id.*

The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment of the entire case.  *Urantia Foundation v. Maaherra*, 895 F.Supp. 1335, 1335 (D. Ariz. 1995).

## II. DISCUSSION

Equilon moves for summary judgment on its claims for declaratory relief, injunctive relief and damages arising from Equilon's termination of Defendants' lease of the Salinas Shell service station.  Equilon has submitted evidence indicating that it validly terminated the Lease, and that it gave proper notice of termination to Defendants.  Equilon asserts that the Lease was validly terminated under both the Petroleum Practices Marketing Act ("PMPA") and the terms of the Lease itself because of (i) the partnership's failure to pay rent, (ii) the partnership's failure to sell fuel for seven consecutive days, and (iii) Pannu's withdrawal from the partnership.  Shahbazi

6

asserts that Equilon invalidly terminated the Lease, and that it breached its duty to act in good

faith and within the course of business.

Equilon has met its initial burden of informing the Court of the basis for the motion and

identifying the portions of the pleadings, admissions, or affidavits that demonstrate the absence

of a triable issue of material fact. The burden thus shifts to Defendants to present specific facts

showing that there are genuine issues for trial. Defendants fail to meet this burden.

**1.    Equilon's Right to Terminate the Lease**

Equilon seeks a declaration that its termination of the Lease was valid under both the

PMPA and under the document's terms because of the partnership's failure to pay rent, failure to

sell fuel for seven consecutive days, and Pannu's withdrawal from the partnership. Motion 7.

All three grounds involve the same nucleus of facts, and Shahbazi does not dispute Equilon's

basic factual assertions. Opp'n 2. Shahbazi admits that rent has not been paid, and that fuel has

not been delivered. Answer Ex. B:1. Defendants do not raise any triable issue of material fact

regarding the existence of the Lease. Answer 4.

a.    Failure to Pay Rent

Equilon asserts that it validly terminated the lease because Defendant did not pay timely

rent. The PMPA provides that a franchisor may terminate the franchise based on the occurrence

of an event that is relevant to the franchise relationship and as a result of which termination of

the franchise relationship is reasonable, including failure by the franchisee to pay to the

franchisor in a timely manner all sums to which the franchisor is legally entitled. 15 U.S.C. §§

2802(b)(2)(c), 2802(c)(8). The terms of the Lease state that the Lessee's failure to pay Lessor

rent in a timely manner is grounds for termination of the lease. Lease § 18(a)(3)(vii), 4(c)(4).

Shahbazi, in both his opposition and other documents in this case, never asserts that the rent has

been paid. Instead, Shahbazi blames the non-payment on Pannu. West Dec. PI, Ex. E at 3.

However, as noted above, the Lease provides that if the "Lessee is comprised of more than one

person, the obligations imposed under this Lease are joint and several as to each person and all

of the terms apply to each person with the same effect as though that person were the sole

Lessee." Lease § 23(a). Under the terms of the lease, Defendants are jointly and severally liable

7

1    for the Lease's obligations, and a failure on the part of Pannu does not allow Shahbazi to remain

2    in the station without paying rent.[3]  The failure to pay rent justifies Equilon's termination of the

3    lease under both the PMPA and the terms of the contract.

4            b.       Failure to Sell Fuel

5           Equilon also maintains that Defendants' failure to sell fuel for seven consecutive days

6    gave it the right to terminate the lease.  The Lease allows Equilon to terminate the lease if

7    Defendants fail to "operate the premises for seven consecutive days."  Lease § 18(a)(3)(viii).

8    The PMPA states that "failure of the franchisee" to "operate the marketing premises for seven

9    consecutive days" is an "event which is relevant to the franchise relationship and the result of

10   which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . .

11   ."  15 U.S.C. § 2802(b)(2)(c).  The failure to "operate the marketing premises" includes failing to

12   sell gas.  *Smoot v. Mobil Oil Corp.*, 722 F. Supp. 849, 855 (D. Mass. 1989).  Defendants do not

13   dispute that they failed to sell gas from June 10, 2006 until December 9, 2006.  See Prel. Inj.

14   Order, 7.  Accordingly, the failure to sell gas for seven consecutive days constitutes grounds for

15   termination under the terms of the Lease and the PMPA..

16           c.       Notice of Termination

17          Equilon asserts it gave Defendants proper notice of termination.  Defendants do not

18   dispute this assertion.  The PMPA provides that the franchisor shall furnish notification of

19   termination ninety days prior to the date on which such termination takes effect.  15 U.S.C. §

20   2804(a)(2).  Equilon's first notice of termination provided ninety days notice to Defendants.

21   Eaves Dec., Ex. B.  The two supplemental notices were sent as soon as Equilon became aware of

22   additional grounds for termination.  Eaves Dec., Ex. C, Ex. D.  All three notices clearly stated

23   the anticipated termination date of September 8, 2006.  Defendants have provided the Court with

24   no evidence that Equilon's characterization of the termination notices is incorrect.  Answer 14.

25

26        [3] Equilon further asserts that Pannu's withdrawal from the partnership, alone, gave
     Equilon the right to terminate the lease.  While the PMPA is silent on this issue, the Lease

27   provides that if the Lessee includes more than one person, the acts of each person are the acts of
     the Lessee.  Lease § 24.  Pannu has abandoned his interest in the Salinas Station.  Shahbazi does

28   not present any evidence that the partnership is still in effect.

8

1   Accordingly, there is no genuine issue of material fact as to whether Equilon validly terminated

2   the lease or gave proper notice of the termination to Defendants.

3   **2.    Affirmative Defense of Bad Faith and Actions Outside Course of Normal Business**

4           Shahbazi asserts as his seventh affirmative defense that Equilon cannot recover damages

5   because it "acted fraudulently in the performance of the contract" and "breached its duty to act in

6   good faith under said contract."  Answer 14: 3-6.  Shahbazi alleges that Equilon exercised bad

7   faith by failing to exercise its right of first refusal in a timely manner when Shahbazi attempted

8   to sell his franchise prior to the events giving rise to this litigation.  Opp'n ¶ 9, 13, 14.  Shahbazi

9   claims that he sold his portion of the franchise four times in 2004 and 2005, but that "Shell acted

10  in bad faith and did not allow the sale to go forward."  Answer 10.  Shahbazi further asserts that

11  Equilon's bad faith invalidates its attempted termination of the Lease.

12          During oral argument, Shahbazi asserted that the Court may analyze the documents in the

13  record to determine the existence of triable issues of fact regarding his affirmative defense of bad

14  faith.  Shahbazi specifically referenced Exhibit 7 from his opposition to the instant motion for a

15  summary judgment, filed on February 6, 2007, and Exhibits 9, 11, and 14 from his opposition to

16  Equilon's motion for a preliminary injunction, filed on November 17, 2006.  As discussed

17  below, neither the exhibits cited by Shahbazi at oral argument nor any other document in the

18  record creates a triable issue of fact.

19          a.      Documents Cited by Shahbazi at Oral Argument

20                  i.   Exhibit 7

21          Exhibit 7 consists of a letter Shahbazi wrote to Mr. Don Maday ("Maday"), Equilon's

22  sales manager on December 20, 2004.  In the letter, Shahbazi states that he intends to sell the

23  Salinas Station (and the Marina station, which is not at issue in this case) because of his "poor

24  health" and "severe financial situation."  Shahbazi proceeds to describe how he sent a previous

25  certified letter to Maday on October 18, 2004, detailing an executed offer he received from

26  Vance Real Estate for $770,000.  Shahbazi then alludes to a November 4, 2004 conversation

27  with Maday in which Maday allegedly said that he had not yet picked up the certified letter from

28  the post office.  Shahbazi states that he and Maday spoke again on November 8, 2004, but

9

1    Maday and Shell took so long to respond to Shahbazi that the potential buyer and another buyer

2    offering $750,000 both withdrew their offers.  Shahbazi then states that while Peninsula

3    responded to his letters giving its approval of the transaction, he needed Shell's approval because

4    Peninsula is not a legal franchise.  Finally, the letter asks Shell to "exercise its First Right of

5    Refusals [sic] or to entertain my buyer" for a new offer.  There is no documentation of any

6    response from Maday.  Shahbazi does not set forth any other evidence to support his contention

7    that Equilon unreasonably delayed its decision, such as declarations from the prospective buyers

8    or proof that the potential buyers submitted the necessary paperwork or credit applications.

9    Exhibit 7 thus does not create a triable issue of fact that would allow Defendants to survive

10   summary judgment.

11            ii.    Exhibits 9, 11 and 14 to the Opposition to Preliminary Injunction

12           Exhibit 9 consists of a series of transactional documents regarding the Salinas Station.

13   The first is a business purchase agreement for the Salinas Station between U Save Trading, Hyun

14   Chang and Misook Chang, and Shahbazi and Pannu.  The agreement is for $750,000 for the

15   business opportunity and $150,000 for the inventory.  It is dated October 7, 2004.  The next

16   document within the exhibit is a counter-offer dated October 9, 2004 that includes terms such as

17   $800,000 for the purchase price and $100,000 for the inventory.  There is also a second counter-

18   offer on October 14, 2004 that includes the same terms, but also includes the language: "Buyer is

19   aware the accepted offer will be forwarded to Shell Corp. legal dept for review as required by

20   Franchise agreement.  Shell will have 10 days to respond and exercise first right to purchase

21   business, and approve this sale."  The counter-offer does not indicate the source of this stated

22   ten-day deadline.  Exhibit 9 contains two other business purchase agreements for the Salinas

23   Station: one dated June 28, 2005 between Sai Lee, et al and Shahbazi and Pannu with a purchase

24   price of $750,000, and another dated July 13, 2005 between Sai Lee and Shahbazi and Pannu for

25   a purchase price of $725,000.

26           Exhibit 11 consists of a business purchase agreement, joint escrow instructions, and

27   disclosure statement detailing an offer from Sai Lee, Celesto Nguyen, and Tam Huyuh for the

28   Salinas Station in the amount of $750,000.  The documents are dated on June 8, 2005.

                                        10

1    Exhibit 14 is a California Association of Business Brokers Representation Agreement

2  from October 15, 2006 [4] that provides for an asking price of $650,000 for the Salinas Station and

3  an eight percent broker fee.  The Court concludes that none of these documents, together or in

4  combination with the other evidence in the record, constitutes evidence of bad faith on the part

5  of Equilon.  Exhibits 9, 11, and 14 include only business purchase agreements and a broker

6  representation agreement.  Like the Maday letter, they do not set forth any other evidence to

7  indicate that Equilon unreasonably delayed its decision as to whether to exercise its right of first

8  refusal.  As discussed above, Shahbazi does not submit any declarations from the prospective

9  buyers.  The exhibits do not provide a basis for denying Equilon's motion for summary

10 judgment.

11        b.    Other Documents Within Record Not Cited at Oral Argument

12            i.    Exhibit 10 to the Opposition to Summary Judgment

13    Exhibit 10 of Shahbazi's opposition to the instant motion is a letter to Shahbazi from

14 Maday sent on September 13, 2005.  The letter responds to Shahbazi's letter on August 29, 2005.

15 Opp'n Ex. 9.  In the August letter, Shahbazi informed Mr. Burrow ("Burrow"), Equilon's general

16 manager, that the franchise agreement had expired as of August 8, 2005 and a renewal was not

17 yet in place.  Shahbazi then stated that he had an escrow pending on his franchise at the Salinas

18 Station, and referred to an offer for $725,000 (the above-referenced July 13, 2005 offer) in

19 addition to an amount for inventory.  Shahbazi made reference to three previous agreements with

20 prospective buyers, as to two of which an escrow was opened, and alleged that Shell had not

21 truly exercised its right of first refusal.  Maday's letter states:

22        Please be advised that Shell Oil Products US ("SOP US") does
         not exercise its first right of refusal.  Accordingly, we look forward
23       to reviewing the assignment.  We would note that your Retail Sales
         Agreement is with Peninsula, and any consent for your assigning
24       that agreement, assuming such consent is required, must come from
         them.  To that end, we would expect that Peninsula will be separately
25

26 _____

27    [4] Exhibit 14 also contains a California Association of Business Brokers Representation
   Agreement dated October 15, 2006.  However, this agreement refers to the Marina station, which
28 is not at issue in this action.

11

1

2

reviewing the assignment of the Retail Sales Agreement assuming
they do not exercise their right of first refusal.

3    Maday informed Shahbazi that the proposed Assignee must complete a credit application within

4    thirty days of receipt of the letter.  Maday also pointed out that the Retail Facility Lease has an

5    automatic expansion of up to six months, and that accordingly the Retail Facility Lease was still

6    in effect.

7            Exhibit 10 also includes a subsequent letter that Maday sent to Shahbazi on October 5,

8    2005, alleging that Maday's September 13, 2005 letter had been refused.  Maday states: "While

9    we cannot understand why you would refuse delivery, it appears to be another of your attempts

10   to make it look as though Shell is not responsive to your requests."  Maday states because he

11   refused the letter, Shahbazi is solely responsible for any delay in the assignment process, and

12   that if Equilon does not hear anything from Shahbazi by October 29, 2005, it will close the file.

13   Shahbazi asserts in his opposition that Maday's letter was returned "refused" because Equilon

14   purposefully addressed the letter to Shahbazi only, and not Pannu, when Equilon knew that

15   Shahbazi was rarely present at the Salinas Station and instead spent most of his time at the

16   Marina station.  Opp'n 11.  Shahbazi states further in his opposition to the motion for

17   preliminary injunction that this refusal brought to his "attention that Mr. Pannu and Shell [were]

18   blocking the sale of [his] station."

19           As already discussed, Shahbazi presents no evidence showing that he submitted the

20   prospective buyers' credit applications to Equilon or that he provided Equilon with prospective

21   lessees that had strong financial credentials.  Nor does Shahbazi present any evidence supporting

22   his claim that Equilon intentionally took steps to ensure that Maday's September 13th letter was

23   "refused."  The materials included in Exhibit 10 thus do not create a triable issue of fact as to

24   Equilon's alleged bad faith or actions outside the course of business.

25           ii.    Exhibit 12 to the Opposition to Summary Judgment

26           Exhibit 12 includes a declaration by Kasra Ajir ("Ajir")[5], manager of the Marina Shell

27

28           [5] Shahbazi originally submitted Ajir's declaration in his opposition to the motion for
     preliminary injunction.

                                                    12

1   station from 1985 through 1996.  Ajir asserts that on December 1, 2005 he spoke by telephone

2   with Burrow regarding the "termination of Salinas Shell."  Ajir states that Burrow informed him

3   that he would call back and that he did so the next day, leaving a voicemail.  Burrow allegedly

4   stated in the voicemail that the Salinas Station, which currently was under construction, would

5   re-open that day and that it would be a "couple of months" before the termination was effective.

6   Burrow further remarked that he would be interested in settling if Pannu could "divorce himself

7   from Mehdi (Shahbazi)" because he felt that he could not make a settlement with Shahbazi.  Ajir

8   Dec. 2.  Ajir declares that Burrow stated that he planned to sell Salinas Shell and then have an

9   open dealer carry the Shell brand.

10          Equilon responds to Ajir's recollections through Burrow's declaration from the motion

11  for a preliminary injunction.  In that declaration, Burrow states:

12          While I have no specific recollection of leaving such a message,
            I did have at least one telephone conversation (I can't recall if
13          there were more) with Mr. Ajir about this issue.  I explained to
            him that I had had discussions with Mr. Shahbazi about resolving
14          the Salinas matter, and that Mr. Shahbazi had made very unreasonable
            demands, namely that he be permitted to buy the station at below
15          market price, *and* that we pay him millions of dollars for "damages"
            he had supposedly suffered . . . I told Mr. Ajir that I believed that
16          the only way we could resolve this was if Ben (Pannu) somehow
            obtained authority to speak on behalf of both himself and Mr.
17          Shahbazi, and I could have discussions with Ben only.

18  Burrow Dec. 2.  While this evidence tends to show that Equilon may not have wanted to

19  continue working with Shahbazi, Ajir's allegations alone are not sufficient to create a triable

20  issue of fact.  The declaration does not tend to prove Shahbazi's allegation that Equilon

21  unreasonably failed to exercise its right of first refusal multiple times.  The Court concludes that

22  Exhibit 12 does not create a triable issue of fact that would allow Defendants to withstand

23  Equilon's motion for summary judgment.

24                  iii.    Exhibit 13 to the Opposition to Summary Judgment

25          Exhibit 13 consists of a letter dated  June 19, 2006 from Shahbazi to James K. Eaves

26  ("Eaves"), Supervisor of Retail Contracts for Shell.  In the letter, Shahbazi remarks that

27  Peninsula informed Shahbazi that it had promised Pannu that it would build a car wash at the

28  Salinas Shell location if Shahbazi's name were removed from the station.  In the letter, Shahbazi

13

also informed Eaves that in his opinion Shell "acted in bad faith and outside the normal course of business" by refusing to send a renewal package until mid-October of 2005 that doubled the rent and fair market value, after the lease and franchise agreement had expired on August 8, 2005. The record does not include a response from Eaves, and this allegation pertains to actions taken not by Equilon but by Peninsula which is not a party to the instant action. Exhibit 13 thus does not create a triable issue of fact regarding Equilon's alleged bad faith or actions outside the normal course of business.

             c.    Alleged Efforts to Reduce Funds for Other Litigation

       Shahbazi also asserted during oral argument that Equilon did not respond to his potential buyers because they did not want Shahbazi to obtain money that could assist him in his own lawsuits against Equilon. However, there is nothing in the record that supports this assertion.[6]

             d.   Conclusion

       Shahbazi has not presented evidence sufficient to create a triable issue of fact regarding his assertion that Equilon's actions were in bad faith or outside the course of normal business,[7] and thus his affirmative defenses of bad faith and actions taken outside the normal course of business cannot survive summary judgment. Nor do Shahbazi's continued assertions that Equilon has engaged in zone pricing and discrimination provide a basis for denying the motion. Shahbazi's zone pricing claims already have been litigated to finality in state proceedings. Supp. West Decl. at Ex. C. The discrimination claim previously was litigated in this Court, and the

---

       [6] Equilon stated during oral argument that Shahbazi's allegations that Equilon did not assert timely rights of first refusal does not remove Shahbazi's obligation to pay rent. Equilon asserted that the covenant to pay rent and a lessor's other obligations in the commercial lease are independent under common law. The Court need not reach this issue, however, because it decides the motion on other grounds. Equilon also asserted at oral argument that Shahbazi's claim concerning Equilon's alleged lack of performance of previous leases may be moot because Shahbazi chose to sign the current Lease in March 2006. However, this issue has not been properly briefed.

       [7] Under the PMPA, a decision is made in good faith if it is not discriminatorily motivated or pretextual. *See Unocal Corp. v. Kaabipour*, 177 F.3d 755, 767 (9th Cir. 1999). In the absence of evidence of a discriminatory or pretextual motive, the Court need not attempt to analyze Equilon's business judgment.

14

1 | judgment in favor of Equilon was affirmed by the Ninth Circuit.  West Decl. at Ex. A; West

2 | Decl. at Ex. H.  Accordingly, the motion for summary judgment will be granted.

3 |     **3.**    **Damages**

4 |     As discussed above, Shahbazi does not dispute that he failed to pay rent or failed to

5 | vacate after Equilon terminated the lease.  Equilon seeks damages for each of these failures.  As

6 | to the failure to pay rent, Equilon asserts that it is entitled to recover unpaid rent as damages.

7 | *See Murphy Oil USA, Inc. V. Brooks Hauser*, 820 F. Supp. 437, 443 (D.Minn. 1993) (summary

8 | judgment granted in breach of contract claim where franchisee admitted failure to make rental

9 | payments; court awarded rental payments due under the lease).  Equilon declares that Defendants

10 | were $44,497.00 in arrears on rent and other associated expenses as of the date of termination,

11 | September 8, 2006.  Troxell Dec. ¶ 7.  The Court has not received a month-by-month breakdown

12 | of the unpaid rent, and only has the declaration of Martha Troxell, Senior Staff Credit Analyst

13 | for Equilon, as proof of the unpaid rent amount.  However, after reviewing the Lease, the Court

14 | concludes that the amount of $44,497.00 appears reasonable.[8]  Shahbazi has not contested this

15 | amount in damages for unpaid rent.

16 |     As to the second type of damages, Equilon asserts that a lessor can recover from a

17 | holdover tenant the reasonable rental value of the property up until the date the tenant vacates.

18 | *Vandenbergh v. Davis*, 190 Cal. App. 2d 694, 699 (1961).  The lease termination date was

19 | September 8, 2006, but Shahbazi did not vacate until December 9, 2006.  The rent that

20 | Defendants would have paid during that period is $25,606.36.  Lease Art. 1, Part 4.  Having

21 | reviewed the Lease, the Court concludes that the amount of $25,606.36 appears reasonable for

22 | this period of time after calculating the monthly rent, monthly maintenance fees, and ad valorem

23 | taxes.

24 |     The Court has reviewed the terms of the Lease and the record.  Shahbazi does not contest

25 | the amounts sought by Equilon.  Accordingly, the Court concludes that Equilon is entitled to

26 |

27 |     [8] The amount appears reasonable after calculating the monthly rent of $5880.00, monthly

28 | maintenance fees of $1946.00, and ad valorem taxes of $598 according to the terms of the Lease.
Lease Part I, Art. No. 4; Ex. A.

15

Case No. C 06-05818 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

1    damages of $70,103.

2

3

4    **4.     Permanent Injunction**

5         Equilon seeks a permanent injunction requiring Defendants to vacate the Salinas Station,

6    to not re-enter it, to remove their property from the station, and to leave Equilon's property at the

7    location.  Motion 16.  The Ninth Circuit has stated that "when actual success on the merits is

8    shown, the inquiry is over and a party is entitled to relief as a matter of law irrespective of the

9    amount of irreparable injury which may be shown." *Multnomah Legal Services Workers Union*

10   *v. Legal Services Corp.*, 936 F.2d 1547 (9th Cir. 1991) (quoting *Sierra Club v. Penfold*, 857 F.2d

11   1307, 1318 n. 16 (9th Cir. 1988)).  As discussed above, Equilon validly terminated the lease, and

12   Shahbazi no longer has a right to be on the property.  Permanent injunctive relief is appropriate.

13        In its December 19, 2006 order, the Court directed Equilon to confer with Shahbazi and

14   take all reasonable steps to allow Shahbazi to collect his inventory within two weeks.  If

15   Shahbazi believes that his inventory or other property remains at the Salinas Station, he should

16   file an appropriate motion to secure its return.

17                                    **III. ORDER**

18        Good cause therefore appearing, IT IS HEREBY ORDERED that Equilon's motion for

19   summary judgment is GRANTED.  The Clerk shall enter judgment and close the file.

20

21

22   DATED: March 12, 2007.

23

24                                    JEREMY FOGEL
                                      United States District Judge

25

26

27

28

Case No. C 06-05818 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX1)

This Order has been served upon the following persons:

Gary Ernest Gray            mail@graybattey.com
Rosanne L. Mah              rosanne.mah@bingham.com
James Severson              james.severson@bingham.com
Colin C. West               colin.west@bingham.com

Mehdi Shahbazi
3030 Del Monte Blvd.
Marina, CA 93933

17