UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER C. AMAEFULE, </br></br>   Plaintiff, </br></br> v. </br></br> EXXONMOBIL OIL CORPORATION, </br></br>   Defendant. | Case No: 1:06-cv-02087-RWR |

### DEFENDANT EXXONMOBIL OIL CORPORATION'S
### REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
### MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION

Plaintiff offers no defense for his complete failure to live up to the Franchise Agreement, a requirement of the preliminary injunction, but instead opposes ExxonMobil's motion on procedural grounds and by misrepresenting ExxonMobil's conduct.  It is beyond cavil that this Court has the power to dissolve its own injunction and that one party's failure to comply with an express condition of that injunction is sufficient reason.  Plaintiff's allegations of retaliation are pure fiction.  Anyway, ExxonMobil's alleged conduct is no defense to Plaintiff's habitual violations of the injunction.  Indeed, even if all of Plaintiff's allegations were true, which they are not, they do not come close to accounting for the 950,000-plus gallons of motor fuel by which Plaintiff has fallen short of his Franchise Agreement obligations since the injunction issued.

Plaintiff's further claim that he is now prepared to adhere to the terms of the injunction is neither relevant nor credible.  ExxonMobil has already given Plaintiff many second chances. Beyond that, this Court just gave Plaintiff an extra fifteen months to get his act together.  Yet, as shown in ExxonMobil's motion, month after month for well over one year, Plaintiff has failed to approach even the minimum requirements of the Franchise Agreement.

Accordingly, ExxonMobil's motion to dissolve should be granted.

I.  **EXXONMOBIL'S MOTION IS PROPER AND SUPPORTED BY THE RELEVANT CASELAW**

This Court has "wide discretion" to dissolve its own injunction. *See Sys. Fed'n No. 91 Ry. Employees' Dep't v. Wright*, 364 U.S. 642, 648 (1961); *see also Langevine v. Dist. of Columbia*, 106 F.3d 1016, 1023 (D.C. Cir. 1997) ("Interlocutory orders … may always be reconsidered prior to final judgment") (citing *Schoen v. Washington Post*, 246 F.2d 670, 673 (D.C. Cir. 1957)). Plaintiff does not dispute this, but claims that Federal Rule of Civil Procedure ("Rule") 60(b) is not an appropriate vehicle for such a motion. Plaintiff neither articulates under which Rule he believes ExxonMobil should have moved, nor identifies any cases supporting the use of another rule.

As an initial matter, Plaintiff's argument seeks to elevate form over substance and, thus, even if such claim were correct (which it is not), it is not dispositive. The overarching purpose of the Rules is to do justice between the parties. And the casebooks are replete with admonitions *against* interpreting the Rules in an overly formalistic manner to avoid deciding the merits.[1] Therefore, even if another Rule should have been cited, the Court still can and should decide this motion on the merits. Obviously there would be no prejudice. Holding otherwise only accomplishes delay by forcing the parties to re-file the same papers citing a different rule.

Moreover, Rule 60(b) is appropriate for a motion to dissolve an injunction issued under the Petroleum Marketing Practices Act ("PMPA"). Preliminary injunctions are not literally "a

---

[1] *See, e.g.*, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1057 (Fed. Cir. 1995) ("As we have noted, a motion's substance, rather than its linguistic form alone, determines its nature and thus its legal effect"), *overruled on other grounds by SanDisk Corp. v. ST Microelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007); *United States v. Oregon*, 769 F.2d 1410, 1414 n.4 (9th Cir. 1985) ("[T]he label attached to a motion does not control its substance") (citing *United States v. Dieter*, 429 U.S. 6, 8-9 (1976)); *Britt v. Whitmire*, 956 F.2d 509, 513 (5th Cir. 1992) ("[I]t is not the label that a party places on a motion or the perceived nature of the relief sought, but the true nature of the relief sought that determines under which rule a motion should be classified"); *United States v. Belanger*, 598 F. Supp. 598, 601 (D. Me. 1984) ("The Court should not hold a party to the label of its motion if relief is available under another provision of the rules") (citing *Morgan Guar. Trust Co. v. Third Nat'l Bank*, 545 F.2d 758, 760 (1st Cir. 1976)).

disposition of the matter on its merits," but are treated differently from other non-final orders. To cite just one example, interlocutory appeal is permitted *as a matter of right* from the issuance, denial, continuance, or modification of a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1).

*Armada Oil*, the only case cited by either party that involves dissolution of an injunction issued under the PMPA, endorsed the use of Rule 60(b) to dissolve a preliminary injunction. *See Armada Oil & Gas Co. v. EPPCO, Inc.*, No. 06-CV-10269, 2006 U.S. Dist. LEXIS 59467, at *7 (E.D. Mich. Aug. 23, 2006). That court granted dissolution of a PMPA preliminary injunction on a motion brought under Rule 60(b)(5), which permits dissolution when the injunction "is no longer equitable." 2006 U.S. Dist. LEXIS 59467, at **7, 16.[2] Plaintiff's answer to *Armada Oil* is to point out the obvious – that that decision is from another federal jurisdiction. This is true, but not helpful. Plaintiff does not even suggest that *Armada Oil* is otherwise somehow unsound. Accordingly, as the only case that is cited by either party squarely addressing the situation at bar, *Armada Oil* is at least entitled not to be disregarded.

With no answer for *Armada Oil*, Plaintiff cites to *SEC v. Vision Communications, Inc.*, a case that supports ExxonMobil's point. *Vision Communications* involved a motion to dissolve a preliminary injunction before a merits determination, albeit not one issued under the PMPA. No. 94-0615 (CRR), 1995 U.S. Dist. LEXIS 2868, at **3-4 (D.D.C. Mar. 6, 1995). In opposing that motion, Plaintiff argued that the motion should be denied for failure to satisfy Rule 60(b). *Id*. at *4. This Court agreed and denied that motion, thereby endorsing Rule 60(b) as the vehicle for such a motion by analyzing that motion under the rubric of that Rule. *Id.* at **8-10.

Forced to accept the point, Plaintiff next cites dicta from *Vision Communications* arguing that dissolution necessitates a showing equivalent to that required to get a preliminary injunction. Plaintiff does not explain how this would work, and attempting to do it is nonsensical. Further, and unlike *Vision Communications*, the case at bar is under the PMPA and, as Plaintiff had said, the PMPA imposes "a relaxed standard" for a preliminary injunction. (Dkt. 2, Plaintiff Motion for

---

[2] Rule 60(b)(5) is not subject to the one-year limit applicable to subsections (1)-(3) of that Rule.

Preliminary Injunction at 2.) Accordingly, if Plaintiff is correct that the burden of dissolution is the equivalent of the burden that was originally necessary to obtain the preliminary injunction, presumably dissolution is available to ExxonMobil under this same "relaxed standard."

The United States Supreme Court has said that, under Rule 60(b)(5), an injunction should be dissolved upon a showing of a "significant change either in factual conditions or in law." *Agostini v. Felton*, 521 U.S. 203, 215 (1996) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). The decisions say nothing about reverse engineering the injunction burden. To the contrary, even *Vision Communications* followed this "changed circumstances" standard. 1995 U.S. Dist. LEXIS 2868, at **8-9.

Moreover, this Court expressly required continued adherence to the Franchise Agreement as a condition of the preliminary injunction. Plaintiff's claim that ExxonMobil must show more than that Plaintiff violated the terms of the preliminary injunction makes no sense. Accepting that rule renders the Court's power to impose a condition on a preliminary injunction a nullity. Plaintiff's violation of the terms of the preliminary injunction alone must be sufficient to support dissolution in order for those terms to have any meaning. Plaintiff has provided the Court with no authority that would support a different conclusion.

Finally, Plaintiff says that ExxonMobil's motion is procedurally flawed because it failed to comply with Local Rule 7(m). Plaintiff concedes that ExxonMobil conferred with counsel, but argues that his promise to shape up should have dissuaded ExxonMobil from filing this motion. Plaintiff's promise of future performance is entirely immaterial to the substance of this motion, which focuses exclusively on Plaintiff's past conduct. His promise could not and did not narrow the dispute, as evidenced by the fact that Plaintiff now opposes this motion in all respects.

Nor was Plaintiff's promise at all credible. Indeed, Plaintiff has already reneged on it. Plaintiff again failed to purchase his required minimums for both February and March. (Ex. 4 to March 31, 2008 Decl. of Ron Alexandrowicz ("Alexandrowicz VI").) In total, Plaintiff has now

fallen up to **955,552 gallons** short of the minimum purchase requirement since the injunction was originally issued.

ExxonMobil made a good faith, but ultimately unsuccessful, effort to narrow this dispute.

### II.    EXXONMOBIL'S CONDUCT DOES NOT ABSOLVE PLAINTIFF'S VIOLATION OF THE INJUNCTION

Plaintiff does not dispute his many violations of the preliminary injunction and, instead, attempts to divert focus to ExxonMobil's conduct.[3]  Plaintiff does not explain how this conduct, even if true (which it is not), would absolve his violations.  Plaintiff cites no cases to this effect and ExxonMobil found none.  Thus, Plaintiff's allegations against ExxonMobil are not relevant.

Nor do ExxonMobil's alleged actions come close to explaining Plaintiff's shortfall in meeting his contractual requirement to purchase certain quantities of motor fuel.  Specifically, ExxonMobil has now showed that Plaintiff has purchased over 950,000 gallons _less_ than was required since the preliminary injunction issued.  Plaintiff's litany of complaints, even if all true, puts at issue *at most* 12,300 gallons of motor fuel.  Thus, even if all of these allegations are true, Plaintiff is still over 900,000 gallons of motor fuel short of meeting his obligations.

Moreover, Plaintiff's claims of retaliation are simply false:

- An ExxonMobil contractor slightly adjusted the "pump-stop" level on Plaintiff's motor fuel tanks up to 500 gallons for reasons entirely unrelated to Plaintiff's pre-pay status, this litigation or the preliminary injunction. (Alexandrowicz VI, ¶ 9.)  As a result of this one time reset, at most, 420 gallons of motor fuel were "lost" – although when Plaintiff sells the station he will recoup these "lost" dollars. (*Id*.) The Franchise Agreement allows ExxonMobil to make that change. (Ex. 2a to Ex. A of ExxonMobil MSJ, § 9.15.)

- Plaintiff's station, like all others, is not eligible for partial load shipments and, generally, must purchase full loads.  This rule is not particular to Plaintiff. (Alexandrowicz VI, ¶ 7.)

- The definition of a "full load" has not changed since the injunction issued. (*Id*.)

---

[3]  As yet another example of Plaintiff's inability to operate within the confines of the Franchise Agreement, a December 12, 2007 letter from ExxonMobil documents Plaintiff's failure to keep proper monthly inventory records, a reasonable and material obligation under the Franchise Agreement. (Ex. 3 to Alexandrowicz VI.)

- Motor fuel shipments are sometimes susceptible to normal delays for a variety of reasons, including availability, demand levels, timing, and routing needs. (Alexandrowicz VI, ¶ 8.) Plaintiff's complaint that, since the injunction, he received two shipments a few days later than desired does not reflect retaliation, but the reality of business in an imperfect world.

- ExxonMobil deducts outstanding rent balance from credit card receipts and wire transfers of all pre-pay franchisees before those funds can be spent. (Alexandrowicz VI, ¶ 6.) ExxonMobil is entitled to payment for rent on Plaintiff's station. Plaintiff's claim that ExxonMobil "confiscated" money that was wired for gasoline purchases is not correct.

- Finally, Plaintiff is absolutely required by the Franchise Agreement to maintain insurance, and to provide proof of such insurance upon the request of ExxonMobil. (Ex. 2a-b to Ex. A of ExxonMobil MSJ, Article XI.) When Plaintiff refused, for still unexplained reasons, to provide ExxonMobil with proof of insurance, ExxonMobil sent out its standard letter addressing the situation. (Ex. 1 to Alexandrowicz VI; *see also* ¶¶ 10-11.) Plaintiff later provided proof and ExxonMobil sent out its standard letter rescinding the prior letter. (Ex. 2 to Alexandrowicz VI; *see also* ¶ 12.) Thus, ExxonMobil maintained the *status quo* by treating Plaintiff just like every other dealer in these respects.

## CONCLUSION

For the above reasons, and those stated therein, ExxonMobil's motion should be granted.

Dated:  March 31, 2008                                  Respectfully submitted,

/s/ Mark Andrew Klapow
Mark Andrew Klapow
Bar No.: 474646
Rena Andoh
Bar No.: 500287
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
T:  (202) 783-0800 / F:  (202) 383-6610
Attorneys for Defendant ExxonMobil Oil Corp.

## CERTIFICATE OF SERVICE

     I hereby certify that, on March 31, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

>Peter C. Ibe, Esq.
>1629 K Street, N.W., Suite 300
>Washington, DC 20006

>          /s/ Rena Andoh
>             Rena Andoh

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER AMAEFULE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06CV02087 |
| ) | |
| EXXONMOBIL OIL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF RON ALEXANDROWICZ

I, **Ron Alexandrowicz**, under penalty of perjury, declare as follows:

1. I am a Territory Manger with ExxonMobil Oil Corporation ("ExxonMobil"), a subsidiary of Exxon Mobil Corporation. In that capacity, I have responsibility for Exxon-branded dealer franchisees in Washington D.C. and portions of Maryland, an area which includes the station currently operated by plaintiff Peter Amaefule ("Plaintiff"). I have held my current position since January 1, 2005, and I have worked for ExxonMobil for over ten years.

2. I have previously submitted declarations in this case on five occasions: on December 11, 2006 in support of ExxonMobil's Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, on February 8, 2007 in support of ExxonMobil's Motion for Summary Judgment, on March 15, 2007 in support of ExxonMobil's Opposition to Plaintiff's Motion for Summary Judgment, on March 22, 2007 in support of ExxonMobil's Reply in Further Support of its Motion for Summary Judgment, and on February 28, 2009 in support of ExxonMobil's Motion to Dissolve the Preliminary Injunction.

3. I submit this declaration in support of ExxonMobil's Reply in Further Support of its Motion to Dissolve the Preliminary Injunction.

4. This declaration is based on my personal knowledge.

5. Since the injunction was imposed, ExxonMobil has consistently treated Plaintiff Peter Amaefule ("Plaintiff") like any other franchisee, without any special privileges.

6. Any outstanding station rent owed by a pre-pay franchisee to ExxonMobil is removed from credit card receipts and wire transfers before any remaining funds can be used to purchase a load of motor fuel for delivery. This policy is applied to all ExxonMobil pre-pay franchisees.

7. The definition of a "full load" of motor fuel has not changed at any point since the preliminary injunction was imposed. In general, franchisees are not permitted to order less than a full load of motor fuel. This policy is applied to all ExxonMobil pre-pay franchisees.

8. Motor fuel shipments may be susceptible to delays for a variety of other reasons, including availability, demand levels, timing, and routing needs. For example, for a variety of possible reasons, a planned delivery of motor fuel will occasionally be diverted. On November 30, 2007, a compartment of "super" grade motor fuel was diverted to another station. As a result, part of Plaintiff's fuel load did not arrive until December 1. Delays such as these can and have happened to other ExxonMobil franchisees.

9. On or around May 2007, Plaintiff's pump stop levels were raised to 500 gallons for each of his three motor fuel tanks. This step was undertaken by an ExxonMobil contractor, and was not related to Plaintiff's pre-pay status, the above-captioned litigation, or the preliminary injunction. The additional motor fuel that is now part of the higher pump stop level is still Plaintiff's motor fuel – if the station were sold, the motor fuel below the pump-stop level would be considered a sellable asset.

10. The standard response that ExxonMobil has to all franchisees who fail to provide proof of insurance is to send a warning letter. The letter is rescinded if franchisees are able to provide proof of insurance before the date of scheduled termination. Plaintiff has failed on at least two occasions to provide proof of insurance in a timely manner.

11. Attached as Exhibit 1 to my declaration is a true and correct copy of a letter to Plaintiff dated June 2, 2006 for failure to provide proof of insurance.

12. Attached as Exhibit 2 to my declaration is a true and correct copy of a letter to Plaintiff dated September 12, 2006 rescinding the previous letter.

13. Plaintiff has further failed to keep proper monthly inventory records, in violation of the Franchise Agreement. Attached as Exhibit 3 to my declaration is a true and correct copy of a letter to Plaintiff dated December 12, 2007 which warns him that his failure to maintain proper records is a violation of the Franchise Agreement.

14. Finally, Plaintiff has continued to fall short of his minimum purchase requirements during February and March 2008. Attached as Exhibit 4 to my declaration are true and correct copies of a Delivery Verification Report, which shows all deliveries of motor fuel to Plaintiff for those months to the best of our current knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 31, 2008.

_____
Ron Alexandrowicz

# ALEXANDROWICZ DECLARATION

# EXHIBIT 1

**ExxonMobil**
*Fuels Marketing*

3225 Gallows Rd.
Fairfax, VA 22037

June 2, 2006

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

PETER AMAEFULE
4650 S CAPITOL STREET SE
WASHINGTON, DC 20032

Notice of Termination
Certificate of Insurance
Station #. 25050

Dear Dealer Name

We are writing on behalf of ExxonMobil Oil Corporation ("ExxonMobil"). Under the terms of Article XI in your franchise agreement(s) with ExxonMobil, you are required to procure and maintain certain levels of insurance, and to provide a Certificate of Insurance to ExxonMobil or its agent.

In a letter dated April 13, 2006, you were reminded of your obligation to provide proof of insurance as required in your franchise agreement(s). As of today, AMCS, an independent contractor, is acting as ExxonMobil's agent for the purpose of monitoring your compliance with insurance requirements and has not received your Certificate of Insurance

For this reason, ExxonMobil hereby cancels, terminates, and non-renews your franchise agreement and all other agreements between ExxonMobil and yourself effective September 18, 2006.

This notice is a separate and independent notice, and is issued for the reason stated herein  This notice does not supersede, modify, affect or change the effective date of any prior Notice of Termination or Non-renewal that you may have received

This notice is given to you, in part, pursuant to the requirements of the Petroleum Marketing Practices Act.  A copy of the statement prepared by the Federal Department of Energy containing a summary of the provisions of the act is enclosed herewith

EXXONMOBIL000240

ExxonMobil will consider rescinding this notice provided AMCS has received a bona fide Certificate of Insurance prior to the effective termination date of September 18, 2006 and upon your written request sent to the following address,

ExxonMobil Business Support Centre ULC
95 Foundry Street
Moncton, NB  E1C 5H7
ATTENTION: Emilie Robichaud

Absent a written Notice of Rescission from ExxonMobil, this Notice of Termination shall remain final

Sincerely,

John Bednash
Area Manager
Mid Atlantic

cc:  R. Alexandrowicz
     E  Robichaud

EXXONMOBIL000241

# ALEXANDROWICZ DECLARATION

# EXHIBIT 2

# ExxonMobil
## *Fuels Marketing*

3225 Gallows Rd
Fairfax, VA 22037

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

September 12, 2006

Peter Amaefule
Exxon Service Station
4650 S Capitol Street SE
Washington, DC 20032

RESCISSION OF NOTICE OF TERMINATION
RE  CERTIFICATE OF INSURANCE

Station Location #  25050

Dear Peter Amaefule

We are writing on behalf of ExxonMobil Oil Corporation ("ExxonMobil")  In a letter dated June 2, 2006, ExxonMobil advised you that it was canceling, terminating and non-renewing your franchise agreement(s) effective September 18, 2006, because of your failure to provide proof of insurance as required by your franchise agreement(s)

Since that time, you provided AMCS with adequate proof of insurance, and have requested that ExxonMobil rescind its Notice of Termination  Accordingly, ExxonMobil hereby withdraws and rescinds the June 2, 2006 Notice of Termination and Non-renewal  This rescission letter <u>DOES NOT</u> affect, modify, or change any previous notice of termination or non-renewal, which may have been issued to you for a separate and independent reason

Your cooperation in providing the required information is appreciated   If you have any questions, please contact your Territory Manager

Sincerely,

John Bednash
Area Manager
Mid Atlantic

cc   R  Alexandrowicz
     E  Robichaud

EXXONMOBIL000249

# ALEXANDROWICZ DECLARATION

# EXHIBIT 3



3225 Gallows Road
Fairfax, VA 22037-0001

December 12, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Peter Amaefule
Exxon Service Station
4650 S. Capitol Street SE
Washington, DC 20032

                **SERVICE STATION 25050**
                FIRST WARNING NOTICE:
                FAILURE TO COMPLY WITH
                REASONABLE AND SIGNIFICANT
                FRANCHISE PROVISIONS

Dear Dealer:

We are writing on behalf of ExxonMobil Oil Corporation (ExxonMobil). Please review Article IX, of your PMPA Franchise Agreement ("Franchise Agreement") effective April 1, 2006, governing the Compliance with Laws, Covenants and Restrictions for your service station.

The following violation was recently observed at your service station:

On November 29, 2007, Territory Manager, Ron Alexandrowicz visited your station to conduct an OIMS to ensure full compliance. The Monthly Inventory Records were not completed from October 1, 2007 to October 15, 2007, October 25, 2007 to October 31, and November 6, 2007 to November 29, 2007. You must resolve and provide documentation within 14 days.

Article IX, of your PMPA Franchise Agreement is a provision which is both reasonable and of material significance to our franchise relationship. Please take immediate action to comply with the provision. We appreciate your efforts to comply with the Franchise Agreement.

Should you have any questions or need assistance please contact me.

                Very truly yours,

                John Bednash
                Area Manager
                Mid Atlantic

# ALEXANDROWICZ DECLARATION

# EXHIBIT 4

# Delivery Verification Report
Period: 02/01/2008 to 03/28/2008

| Contract Id: | 11350 |
|---|---|
| Contact Name: | Anne Johnson |
| Phone: | 713-656-1243 |
| Group Id: | 113543 |

| Customer: | ExxonMobil |
|---|---|
| | 3225 Gallows Rd |
| | Fairfax |
| | VA |
| | 22037 |

Created: 03/28/2008 05:43 PM

| Site Id | Site Name | Address | City/State | Tank Num | Product Label | Start Time | End Time | Total Time | Adj Volume | Temp | Adj TC Volume | Water |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25050 | PETER AMAEFULE | 4650 S CAPITOL STREET SE | WASHINGTON, DC | 1 | REGULAR | 02/11/2008 05:31 PM | 02/11/2008 05:54 PM | 23 | 5897 | 50 | 5950 | 0 |
| | | | | | | 03/06/2008 05:14 AM | 03/06/2008 05:35 AM | 21 | 5927 | 51 | 5970 | 0 |
| | | | | | | 03/15/2008 10:46 AM | 03/15/2008 11:08 AM | 22 | 5910 | 52 | 5945 | 0 |
| | | | | | | 03/22/2008 04:43 AM | 03/22/2008 05:08 AM | 25 | 7977 | 52 | 8033 | 0 |
| | | | | 2 | PLUS | 02/11/2008 05:40 PM | 02/11/2008 05:48 PM | 8 | 1308 | 50 | 1318 | 0 |
| | | | | | | 03/06/2008 05:21 AM | 03/06/2008 05:30 AM | 9 | 1748 | 51 | 1759 | 0 |
| | | | | | | 03/15/2008 10:52 AM | 03/15/2008 11:04 AM | 12 | 1573 | 53 | 1581 | 0 |
| | | | | 3 | SUPREME | 02/11/2008 05:31 PM | 02/11/2008 05:42 PM | 11 | 1798 | 50 | 1814 | 0 |
| | | | | | | 03/06/2008 05:17 AM | 03/06/2008 05:24 AM | 7 | 1291 | 53 | 1298 | 0 |
| | | | | | | 03/15/2008 10:47 AM | 03/15/2008 10:56 AM | 9 | 1295 | 53 | 1301 | 0 |
| | | | | | | Sites Total: | 10 | 147.0 | 34724 | | 34969 | 0 |